OCCIDENTAL LIFE INSURANCE COMPANY OF
CALIFORNIA *v.* EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

No. 76–99.  Argued April 20, 1977—Decided June 20, 1977

STEWART, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, POWELL, and STEVENS, JJ., joined. REHNQUIST, J., filed an opinion dissenting in part, in which BURGER, C. J., joined, *post*, p. 373.

*Dennis H. Vaughn* argued the cause for petitioner. With him on the briefs were *Leonard S. Janofsky* and *Howard C. Hay*.

*Thomas S. Martin* argued the cause for respondent. With him on the brief were *Acting Solicitor General Friedman*,

*Deputy Solicitor General Jones, Abner W. Sibal, Joseph T. Eddins,* and *Beatrice Rosenberg.**

MR. JUSTICE STEWART delivered the opinion of the Court.

In 1972 Congress amended Title VII of the Civil Rights Act of 1964 so as to empower the Equal Employment Opportunity Commission to bring suit in a federal district court against a private employer alleged to have violated the Act. The sole question presented by this case is what time limitation, if any, is imposed on the EEOC's power to bring such a suit.

I

On December 27, 1970, an employee of the petitioner Occidental Life Insurance Co. filed a charge with the EEOC claiming that the company had discriminated against her because of her sex.[1] After a fruitless referral to the appropriate state agency, the charge was formally filed with the EEOC on March 9, 1971,[2] and subsequently served on the company. After investigation, the EEOC served proposed findings of fact on the company on February 25, 1972, to which the company in due course filed exceptions. Conciliation discussions between the EEOC and the company began in the summer of 1972. These discussions continued sporadically into 1973, but on September 13 of that year the EEOC determined that conciliation efforts had failed and so

---

*Wayne S. Bishop* and *John J. Gallagher* filed a brief for the Texas Association of Business as *amicus curiae* urging reversal.

*Robert T. Thompson, Lawrence Kraus,* and *Richard P. O'Brecht* filed a brief for the Chamber of Commerce of the United States as *amicus curiae.*

[1] The charge specified that the most recent act of discrimination was on October 1, 1970.

[2] Civil Rights Act of 1964, §§ 706 (b), (d), 78 Stat. 259, 42 U. S. C. §§ 2000e–5 (b), (d); *Love* v. *Pullman Co.,* 404 U. S. 522.

notified the company and the original complainant. The latter requested that the case be referred to the General Counsel of the EEOC to bring an enforcement action. On February 22, 1974, approximately three years and two months after the complainant first communicated with the EEOC and five months after conciliation efforts had failed, the EEOC brought this enforcement action in a Federal District Court.

The District Court granted the company's motion for summary judgment on the ground that the law requires that an enforcement action be brought within 180 days of the filing of a charge with the EEOC.[3] Alternatively, the court held that the action was subject to the most appropriate state limitations statute and was therefore barred by the one-year limitation provision of Cal. Code Civ. Proc. Ann. § 340 (3) (West Supp. 1977).[4] The Court of Appeals for the Ninth Circuit reversed, holding that the federal law does not impose a 180-day limitation on the EEOC's authority to sue and that the action is not governed by any state statute of limitations. 535 F. 2d 533.

We granted certiorari, 429 U. S. 1022, to consider an important and recurring question regarding Title VII.

## II

As enacted in 1964, Title VII limited the EEOC's function to investigation of employment discrimination charges and informal methods of conciliation and persuasion.[5] The failure

---

[3] The 1972 amendments to Title VII were made applicable "with respect to charges pending with the Commission on the date of enactment." § 14, 86 Stat. 113. The District Court also held that EEOC enforcement suits, such as this one, based on charges within the coverage of § 14 must be brought within 180 days of March 24, 1972, the effective date of the amendments.

[4] The District Court's decision is reported in 12 FEP Cases 1298.

[5] Civil Rights Act of 1964, § 706 (a), 78 Stat. 259, 42 U. S. C. § 2000e-5 (a).

of conciliation efforts terminated the involvement of the EEOC. Enforcement could then be achieved, if at all, only if the charging party, or other person aggrieved by the allegedly unlawful practice, initiated a private suit within 30 days after EEOC notification that conciliation had not been successful.[6]

In the Equal Employment Opportunity Act of 1972[7] Congress established an integrated, multistep enforcement procedure culminating in the EEOC's authority to bring a civil action in a federal court. That procedure begins when a charge is filed with the EEOC alleging that an employer has engaged in an unlawful employment practice. A charge must be filed within 180 days after the occurrence of the allegedly unlawful practice, and the EEOC is directed to serve notice of the charge on the employer within 10 days of filing.[8] The EEOC is then required to investigate the charge and determine whether there is reasonable cause to believe that it is true. This determination is to be made "as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge."[9] If the EEOC finds that there is reasonable cause it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."[10] When "the Commission [is] unable to secure . . . a

[6] § 706 (e), 42 U. S. C. § 2000e-5 (e).

[7] 86 Stat. 103, 42 U. S. C. § 2000e *et seq.* (1970 ed., Supp. V), amending Civil Rights Act of 1964, 78 Stat. 253. All subsequent citations to Title VII in this opinion are to the 1964 Act as amended.

[8] § 706 (e), 42 U. S. C. § 2000e-5 (e) (1970 ed., Supp. V). If a charge has been initially filed with or referred to a state or local agency, it must be filed with the EEOC within 300 days after the practice occurred or within 30 days after notice that the state or local agency has terminated its proceeding, whichever is earlier. *Ibid.*

[9] § 706 (b), 42 U. S. C. § 2000e-5 (b) (1970 ed., Supp. V).

[10] *Ibid.*

conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge." [11]

The 1972 Act expressly imposes only one temporal restriction on the EEOC's authority to embark upon the final stage of enforcement—the bringing of a civil suit in a federal district court: Under § 706 (f)(1), the EEOC may not invoke the judicial power to compel compliance with Title VII until at least 30 days after a charge has been filed. But neither § 706 (f) nor any other section of the Act explicitly requires the EEOC to conclude its conciliation efforts and bring an enforcement suit within any maximum period of time.

The language of the Act upon which the District Court relied in finding a limitation that bars the bringing of a lawsuit by the EEOC more than 180 days after a timely charge has been filed with it is found in § 706 (f)(1), 42 U. S. C. § 2000e–5 (f)(1) (1970 ed., Supp. V), which provides in relevant part:

> "If a charge filed with the Commission . . . is dismissed by the Commission, or within one hundred and eighty days from the filing of such charge or the expiration of any period of reference [from a state agency], whichever is later, the Commission has not filed a civil action under this section . . . , or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was

---

[11] § 706 (f)(1), 42 U. S. C. § 2000e–5 (f)(1) (1970 ed., Supp. V). In the case of a government, governmental agency, or political subdivision, the EEOC is required, upon failure of conciliation, to refer the case to the Attorney General who may then bring a civil action. *Ibid.*

filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice."

On its face, § 706 (f)(1) provides little support for the argument that the 180-day provision is such a statute of limitations. Rather than limiting action by the EEOC, the provision seems clearly addressed to an alternative enforcement procedure: If a complainant is dissatisfied with the progress the EEOC is making on his or her charge of employment discrimination, he or she may elect to circumvent the EEOC procedures and seek relief through a private enforcement action in a district court. The 180-day limitation provides only that this private right of action does not arise until 180 days after a charge has been filed. Nothing in § 706 (f)(1) indicates that EEOC enforcement powers cease if the complainant decides to leave the case in the hands of the EEOC rather than to pursue a private action.

In short, the literal language of § 706 (f)(1) simply cannot support a determination that it imposes a 180-day time limitation on EEOC enforcement suits. On the contrary, a natural reading of § 706 (f)(1) can lead only to the conclusion that it simply provides that a complainant whose charge is not dismissed or promptly settled or litigated by the EEOC may himself bring a lawsuit, but that he must wait 180 days before doing so. After waiting for that period, the complainant may either file a private action within 90 days after EEOC notification or continue to leave the ultimate resolution of his charge to the efforts of the EEOC.

Only if the legislative history of § 706 (f)(1) provided firm evidence that the subsection cannot mean what it so clearly seems to say would there be any justification for construing it in any other way. But no such evidence is to be found.

The dominant Title VII battle in the 92d Congress was over what kind of additional enforcement powers should be granted to the EEOC. Proponents of increased EEOC power

constituted a substantial majority in both Houses of Congress, but they were divided between those Members who favored giving the EEOC power to issue cease-and-desist orders and those who advocated authorizing it to bring suits in the federal district courts.

The supporters of cease-and-desist authority won the first victory when Committees in both Houses favorably reported bills providing for that enforcement technique. The bill reported by the House Committee contained a section entitled "Civil Actions by Persons Aggrieved," embodying the provisions that eventually became that part of § 706 (f)(1) at issue in the present case.[12]

The Committee Report clearly explained that the purpose of this provision was to afford an aggrieved person the option of withdrawing his case from the EEOC if he was dissatisfied with the rate at which his charge was being processed:

"In the case of the Commission, the burgeoning workload, accompanied by insufficient funds and a shortage of staff, has, in many instances, forced a party to wait 2 to 3 years

---

[12] The section in the House Committee bill provided, in relevant part:
"If (1) the Commission determines that there is no reasonable cause to believe the charge is true and dismisses the charge . . . , (2) finds no probable jurisdiction and dismisses the charge, or (3) within one hundred and eighty days after a charge is filed with the Commission . . . , the Commission has not either (i) issued a complaint . . . , (ii) determined that there is not reasonable cause to believe that the charge is true and dismissed the charge, . . . or (iii) entered into a conciliation agreement . . . , the Commission shall so notify the person aggrieved and within sixty days after the giving of such notice a civil action may be brought . . . by the person claiming to be aggrieved . . . . Upon timely application, the court may, in its discretion, permit the Commission to intervene in such civil action if it certifies that the case is of general public importance. Upon the commencement of such civil action, the Commission shall be divested of jurisdiction over the proceeding and shall take no further action with respect thereof [sic] . . . ." H. R. 1746, 92d Cong., 1st Sess., § 8 (j) (1971), reprinted in H. R. Rep. No. 92–238, pp. 54–55 (1971).

before final conciliation procedures can be instituted. This situation leads the committee to believe that the private right of action, both under the present Act and in the bill, provides the aggrieved party a means by which he may be able to escape from the administrative quagmire which occasionally surrounds a case caught in an overloaded administrative process." [13]

Opponents of cease-and-desist authority carried their cause to the floor of the House, where Congressmen Erlenborn and Mazzoli introduced a substitute bill, which authorized the EEOC when conciliation failed to file federal-court actions rather than conduct its own hearings and issue cease-and-desist orders. The Erlenborn-Mazzoli substitute contained a private action provision substantially the same as that of the Committee bill.[14] There was no suggestion in the House debates that that section in the substitute bill was intended to be a statute of limitations on EEOC enforcement action, or that the purpose of the provision differed in any way from that expressed in the Committee Report. The Erlenborn-Mazzoli substitute was adopted by the House.

Senate action on amendments to Title VII was essentially parallel to that of the House, beginning with the introduction of a bill giving the EEOC cease-and-desist power, and ending with the substitution of a bill authorizing it instead to file suits in the federal courts. As in the House, both the original and substitute Senate bills authorized complainants dissatisfied with the pace of EEOC proceedings to bring individual lawsuits after 180 days.[15] And, as in the House, the Senate Committee explained that such a provision was necessary

---

[13] *Id.,* at 12.

[14] H. R. 9247, 92d Cong., 1st Sess., § 3 (c) (1971).

[15] S. 2515, 92d Cong., 1st Sess., § 4 (a) (1971); S. 2617, 92d Cong., 1st Sess., § 3 (c) (1971).

because the heavy caseload of the EEOC could result in delays unacceptable to aggrieved persons:

"As it indicated in testimony, [the EEOC's] caseload has increased at a rate.which surpasses its own projections. The result has been increasing backlogs in making determinations, and the possibility of occasional hasty decisions, made under the press of time, which have unfairly prejudiced complaints. Accordingly, where the Commission is not able to pursue a complaint with satisfactory speed, or enters into an agreement which is not acceptable to the aggrieved party, the bill provides that the individual shall have an opportunity to seek his own remedy, even though he may have originally submitted his charge to the Commission." [16]

The Senate Committee further noted that the "primary concern should be to protect the aggrieved person's option to seek a prompt remedy," and that the purpose of the 180-day provision was to preserve "the private right of action by an aggrieved person." [17]

Senator Dominick led the opposition to the Committee bill on the floor of the Senate. His substitute bill did not give the EEOC power to issue cease-and-desist orders but authorized it instead to bring enforcement suits in federal courts. The substitute bill also contained a provision authorizing private lawsuits almost identical to that contained in the Committee bill. There ensued a month-long Senate debate, at the conclusion of which the substitute bill was adopted by the Senate. During the course of that debate there were only a few isolated and ambiguous references to the provision in the substitute bill authorizing federal suits by complainants dissatisfied with EEOC delay.[18] But a section-by-section

---

[16] S. Rep. No. 92–415, p. 23 (1971).

[17] *Id.*, at 24, 40.

[18] At one point in the debates Senator Javits, a sponsor of the Committee bill, sought to amend the substitute bill to clarify the relationship

analysis of the substitute bill made available before the final vote in the Senate clearly explained the purpose of the 180-day provision:

> "In providing this provision, it is intended that . . . the person aggrieved should [not] have to endure lengthy delays if the agency does not act with due diligence and speed. Accordingly, the provisions . . . would allow the person aggrieved to elect to pursue his or her own remedy in the courts where agency action does not prove satisfactory." [19]

After the final Senate vote the House and Senate bills were sent to a Conference Committee. An analysis presented to the Senate with the Conference Report provides the final and conclusive confirmation of the meaning of § 706 (f)(1):

> "The retention of the private right of action, as amended, . . . is designed to make sure that the person aggrieved does not have to endure lengthy delays if the Commission . . . does not act with due diligence and speed. Accordingly, the provisions . . . allow the person

---

between EEOC and private lawsuits, by providing that "if within thirty days after a charge is filed with the Commission . . . the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission *shall* bring a civil action . . . ." Senator Dominick objected to the substitution of the word "shall" for "may" and suggested that "in the interest of flexibility in the Commission's schedule, and in the interest of flexibility in working something out through voluntary compliance, it would be far better to put in the word 'may.'" In the exchange that followed, both Senators manifested their understanding that the 180-day provision in the Dominick amendment served the same purpose as the analogous provision in the Committee bill. 118 Cong. Rec. 1068–1069 (1972). Senator Javits later agreed to the use of the word "may," and Senator Dominick responded as follows:

"I think this change is very meritorious, as I pointed out in my first statement. I do not think the Commission should be mandated on what date an agency should bring suit when we are trying to work out matters the best we can by conciliation." *Id.,* at 1069.

[19] *Id.,* at 4942.

aggrieved to elect to pursue his or her own remedy under this title in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution.

"It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC. . . . However, as the individual's rights to redress are paramount under the provisions of Title VII it is necessary that all avenues be left open for quick and effective relief." [20]

The legislative history of § 706 (f)(1) thus demonstrates that the provision was intended to mean exactly what it seems to say: An aggrieved person unwilling to await the conclusion of extended EEOC proceedings may institute a private lawsuit 180 days after a charge has been filed. The subsection imposes no limitation upon the power of the EEOC to file suit in a federal court. [21]

### III

The company argues that if the Act contains no limitation on the time during which an EEOC enforcement suit may be brought, then the most analogous state statute of limitations should be applied. [22] Relying on a long line of cases in this

---

[20] *Id.*, at 7168; see *id.*, at 7565.

[21] In addition to the Court of Appeals for the Ninth Circuit in the present case, six other Courts of Appeals have reached this conclusion. *EEOC* v. *E. I. du Pont de Nemours & Co.*, 516 F. 2d 1297 (CA3); *EEOC* v. *Cleveland Mills Co.*, 502 F. 2d 153 (CA4); *EEOC* v. *Louisville & Nashville R. Co.*, 505 F. 2d 610 (CA5); *EEOC* v. *Kimberly-Clark Corp.*, 511 F. 2d 1352 (CA6); *EEOC* v. *Meyer Bros. Drug Co.*, 521 F. 2d 1364 (CA8); *EEOC* v. *Duval Corp.*, 528 F. 2d 945 (CA10).

[22] The two Courts of Appeals that have considered this question have reached differing conclusions. *EEOC* v. *Kimberly-Clark Corp.*, *supra*, at 1359–1360 (state limitations not applicable); *EEOC* v. *Griffin Wheel Co.*, 511 F. 2d 456 (CA5) (state limitations applicable to backpay suits only).

Court holding state limitations periods applicable to actions brought under federal statutes, the company contends that California law barred the EEOC from bringing this lawsuit.

When Congress has created a cause of action and has not specified the period of time within which it may be asserted, the Court has frequently inferred that Congress intended that a local time limitation should apply. *E. g., Runyon* v. *McCrary,* 427 U. S. 160, 179–182 (Civil Rights Act of 1866); *Auto Workers* v. *Hoosier Cardinal Corp.,* 383 U. S. 696 (§ 301 of the Labor Management Relations Act); *O'Sullivan* v. *Felix,* 233 U. S. 318 (Civil Rights Act of 1871); *Chattanooga Foundry & Pipe Works* v. *Atlanta,* 203 U. S. 390 (Sherman Antitrust Act); *Campbell* v. *Haverhill,* 155 U. S. 610 (Patent Act). This "implied absorption of State statutes of limitation within the interstices of . . . federal enactments is a phase of fashioning remedial details where Congress has not spoken but left matters for judicial determination." *Holmberg* v. *Armbrecht,* 327 U. S. 392, 395.

But the Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies. "Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide." *Johnson* v. *Railway Express Agency,* 421 U. S. 454, 465. State limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute. *Ibid.; Auto Workers* v. *Hoosier Cardinal Corp., supra,* at 701; *Board of County Comm'rs* v. *United States,* 308 U. S. 343, 352. With these considerations in mind, we turn to the company's argument in this case.

When Congress first enacted Title VII in 1964 it selected "[c]ooperation and voluntary compliance . . . as the pre-

ferred means for achieving" the goal of equality of employment opportunities. *Alexander* v. *Gardner Denver Co.*, 415 U. S. 36, 44. To this end, Congress created the EEOC and established an administrative procedure whereby the EEOC "would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit." *Ibid.* Although the 1972 amendments provided the EEOC with the additional enforcement power of instituting civil actions in federal courts, Congress preserved the EEOC's administrative functions in § 706 of the amended Act. Thus, under the procedural structure created by the 1972 amendments, the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties; it is a federal administrative agency charged with the responsibility of investigating claims of employment discrimination and settling disputes, if possible, in an informal, noncoercive fashion. Unlike the typical litigant against whom a statute of limitations might appropriately run, the EEOC is required by law to refrain from commencing a civil action until it has discharged its administrative duties.

In view of the federal policy requiring employment discrimination claims to be investigated by the EEOC and, whenever possible, administratively resolved before suit is brought in a federal court, it is hardly appropriate to rely on the "State's wisdom in setting a limit . . . on the prosecution . . . ." *Johnson* v. *Railway Express Agency, supra,* at 464. For the "State's wisdom" in establishing a general limitation period could not have taken into account the decision of Congress to delay judicial action while the EEOC performs its administrative responsibilities. See *Order of Railroad Telegraphers* v. *Railway Express Agency,* 321 U. S. 342, 348; *Cope* v. *Anderson,* 331 U. S. 461, 464; *Rawlings* v. *Ray,* 312 U. S. 96, 98. Indeed, the one-year statute of limitations applied by the District Court in this case could

under some circumstances directly conflict with the timetable for administrative action expressly established in the 1972 Act.[23]

But even in cases involving no inevitable and direct conflict with the express time periods provided in the Act, absorption of state limitations would be inconsistent with the congressional intent underlying the enactment of the 1972 amendments. Throughout the congressional debates many Members of both Houses demonstrated an acute awareness of the enormous backlog of cases before the EEOC [24] and the consequent delays of 18 to 24 months encountered by aggrieved persons awaiting administrative action on their complaints.[25]

---

[23] Since California has created a state agency with authority to provide a remedy for employment discrimination, Cal. Labor Code Ann. §§ 1410–1433 (West 1971), an aggrieved party in that State may file a charge with the EEOC as long as 300 days after the allegedly unlawful act. See n. 8, *supra.* Under § 706 (b) the EEOC may then take at least 120 days to investigate the charge and make its determination of reasonable cause. Thus, even if the aggrieved party and the EEOC act within the 420-day period expressly authorized by the Act, the California limitations period applied by the District Court would expire before the EEOC had an opportunity to begin any conciliation efforts, let alone bring a lawsuit.

[24] In his testimony before the House Committee, William Brown III, Chairman of the EEOC, stated that as of February 20, 1971, there was a backlog of 25,195 pending charges. Equal Employment Opportunities Enforcement Procedures, Hearings on H. R. 1746 before the General Subcommittee on Labor of the House Committee on Education and Labor, 92d Cong., 1st Sess., 81 (1971). By the time Chairman Brown testified before the Senate Committee, the backlog had increased to nearly 32,000 cases and further increases were expected. Equal Employment Opportunity Enforcement Act of 1971, Hearings on S. 2515, S. 2617, H. R. 1746, before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 92d Cong., 1st Sess., 71 (1971).

[25] See, *e. g.,* 117 Cong. Rec. 31959 (1971) (remarks of Rep. Martin); *id.,* at 31972 (remarks of Rep. Erlenborn); 118 Cong. Rec. 594–595 (1972) (remarks of Sen. Dominick); *id.,* at 699–700 (remarks of Sen. Fannin); *id.,* at 944 (remarks of Sens. Talmadge and Chiles); *id.,* at 2386 (remarks of Sen. Allen); *id.,* at 3136–3137 (remarks of Sens. Gurney and Allen);

Nevertheless, Congress substantially increased the workload of the EEOC by extending the coverage of Title VII to state employers, private employers with as few as 15 employees, and nonreligious educational institutions; [26] by transferring the authority to bring pattern-or-practice suits from the Attorney General to the Commission; [27] and by authorizing the Commission to bring civil actions in the federal courts.[28]  It would hardly be reasonable to suppose that a Congress aware of the severe time problems already facing the EEOC would grant that agency substantial additional enforcement responsibilities and at the same time consign its federal lawsuits to the

*id.*, at 3969–3973 (remarks of Sens. Javits, Cooper, Dominick, Williams, and Allen).

The company contends that the numerous references in the debates to the EEOC's backlog and delays demonstrate that by adopting the court enforcement plan Congress intended to restrict the time allowed for investigation and conciliation of a charge.  Nearly all of the references, however, were in the context of discussions of whether enforcement after conciliation efforts had failed could be accomplished more expeditiously through an administrative process or through lawsuits in the federal courts.  The concern, therefore, was with the additional delays that complainants would suffer if the EEOC were given the task of conducting its own hearings and issuing cease-and-desist orders.  Congressional concern over delays during the investigation and conciliation process was resolved by providing complainants with the continuing opportunity to withdraw their cases from the EEOC and bring private suits.  See Part II, *supra.*

[26] §§ 701 (a), (b), 702, 42 U. S. C. §§ 2000e (a), (b), 2000e–1 (1970 ed., Supp. V).  The number of state and local governmental employees who would be brought under the jurisdiction of the EEOC was estimated to be more than 10 million.  117 Cong. Rec. 31961 (1971) (remarks of Rep. Perkins); 118 Cong. Rec. 699 (1972) (remarks of Sen. Fannin).  The elimination of the exemption for nonreligious educational institutions added an estimated 4.3 million employees.  *Id.*, at 4931 (remarks of Sen. Cranston).

[27] § 707 (c), 42 U. S. C. § 2000e–6 (c) (1970 ed., Supp. V).

[28] § 706 (f) (1), 42 U. S. C. § 2000e–5 (f) (1) (1970 ed., Supp. V).

vagaries of diverse state limitations statutes, some as short as one year.

Congress did express concern for the need of time limitations in the fair operation of the Act, but that concern was directed entirely to the initial filing of a charge with the EEOC and prompt notification thereafter to the alleged violator. The bills passed in both the House and the Senate contained short time periods within which charges were to be filed with the EEOC and notice given to the employer.[29] And the debates and reports in both Houses made evident that the statute of limitations problem was perceived in terms of these provisions, rather than in terms of a later limitation on the EEOC's power to sue.[30] That perception was reflected in the final version of the 1972 Act, which requires that a charge must be filed with the EEOC within 180 days of the alleged

---

[29] The House bill provided that the EEOC serve notice of the charge on the alleged violator within five days; the Senate bill required notice within 10 days. Both bills included a 180-day limitation on an aggrieved party's filing of a charge. S. Rep. No. 92–681, pp. 16–17 (1972).

[30] Because the bill reported by the House Committee did not require notice of a charge within any specific time, the dissenters from the Committee Report urged that the 180-day filing limitation be amended to require the EEOC to give notice within five days, or some other reasonable time, after a charge had been filed. H. R. Rep. No. 92–238, p. 66 (1971). On the floor of the House, Congressman Erlenborn explained that the amendment was for the purpose of

"giving notice to the party charged [so] that he would have the opportunity to gather and preserve the evidence with which to sustain himself when formal charges are filed and subsequent enforcement proceedings are instituted." 117 Cong. Rec. 31972 (1971).

The requirement of reasonable notice quickly received the support of proponents of the Committee bill. *Id.*, at 31783–31784 (remarks of Rep. Dent); *id.*, at 31961 (remarks of Rep. Perkins). In the Senate a 10-day-notice provision was included in the bill reported out of Committee in order "to protect fully the rights of the person or persons against whom the charge is filed." S. Rep. No. 92–415, p. 25 (1971).

violation of Title VII, and that the alleged violator must be notified "of the charge (including the date, place and circumstances of the alleged unlawful employment practice) . . . within ten days" thereafter.[31]

The fact that the only statute of limitations discussions in Congress were directed to the period preceding the filing of an initial charge is wholly consistent with the Act's overall enforcement structure—a sequential series of steps beginning with the filing of a charge with the EEOC. Within this procedural framework, the benchmark, for purposes of a statute of limitations, is not the last phase of the multistage scheme, but the commencement of the proceeding before the administrative body.

## IV

The absence of inflexible time limitations on the bringing of lawsuits will not, as the company asserts, deprive defendants in Title VII civil actions of fundamental fairness or subject them to the surprise and prejudice that can result from the prosecution of stale claims. Unlike the litigant in a private action who may first learn of the cause against him upon service of the complaint, the Title VII defendant is alerted to the possibility of an enforcement suit within 10 days after a charge has been filed. This prompt notice serves, as Congress intended, to give him an opportunity to gather and preserve evidence in anticipation of a court action.

Moreover, during the pendency of EEOC administrative proceedings, a potential defendant is kept informed of the progress of the action. Regulations promulgated by the EEOC require that the charged party be promptly notified when a determination of reasonable cause has been made,[32]

---

[31] §§ 706 (b), (e), 42 U. S. C. §§ 2000e–5 (b), (e) (1970 ed., Supp. V).

[32] Prompt notice of a reasonable-cause determination also serves to cure any deficiencies in the 10-day notice that may result from EEOC amendment of the claimed violation after investigation. See *EEOC* v. *General Electric Co.*, 532 F. 2d 359, 366 (CA4); *EEOC* v. *Huttig Sash & Door Co.*,

29 CFR § 1601.19b (b) (1976), and when the EEOC has terminated its efforts to conciliate a dispute, §§ 1601.23, 1601.25.

It is, of course, possible that despite these procedural protections a defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts. If such cases arise the federal courts do not lack the power to provide relief. This Court has said that when a Title VII defendant is in fact prejudiced by a private plaintiff's unexcused conduct of a particular case, the trial court may restrict or even deny backpay relief. *Albemarle Paper Co.* v. *Moody,* 422 U. S. 405, 424–425. The same discretionary power "to locate 'a just result' in light of the circumstances peculiar to the case," *ibid.,* can also be exercised when the EEOC is the plaintiff.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE joins, dissenting in part.

While I agree with Part II of the Court's opinion, holding that § 706 (f)(1), 42 U. S. C. § 2000e–5 (f)(1) (1970 ed., Supp. V), does not impose a limitation on the power of the EEOC to file suit in a federal court, I do not agree with the Court's conclusion in Part III that the EEOC is not bound by any limitations period at all. The Court's actions, and the reasons which it assigns for them, suggest that it is more concerned with limitlessly expanding the important underlying statutory policy than it is with considerations traditionally dealt with by judges. Since I believe that a consistent line of opinions from this Court holding that, in the absence of a

---

511 F. 2d 453, 455 (CA5); *EEOC* v. *Kimberly-Clark Corp.,* 511 F. 2d, at 1363. See also *NLRB* v. *Fant Milling Co.,* 360 U. S. 301; *National Licorice Co.* v. *NLRB,* 309 U. S. 350, 367–369.

federal limitations period, the applicable state limitations period will apply, is being ignored by a process of unwarranted judicial legislation, I would reverse the judgment of the Court of Appeals in this case.

I

Since I agree with the Court that the Act contains no limitation on the time during which an enforcement suit may be brought by the EEOC, I also agree with it that the relevant inquiry is whether the most analogous state statute of limitations applies. Unless the United States is suing in its sovereign capacity, a matter which I treat below, the answer one would have derived before today from the opinions of this Court over a period of 140 years would surely have been "yes." See, e. g., McCluny v. Silliman, 3 Pet. 270, 277 (1830); Campbell v. Haverhill, 155 U. S. 610 (1895); McClaine v. Rankin, 197 U. S. 154 (1905); Chattanooga Foundry & Pipe Works v. Atlanta, 203 U. S. 390 (1906); O'Sullivan v. Felix, 233 U. S. 318 (1914); Auto Workers v. Hoosier Cardinal Corp., 383 U. S. 696 (1966); Johnson v. Railway Express Agency, 421 U. S. 454 (1975); Runyon v. McCrary, 427 U. S. 160 (1976).

The Court, however, today relies on basically two interrelated reasons for refusing to apply California's applicable statute of limitations to suits brought by the EEOC. First, the Court postulates that "the Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute." Ante, at 367. Second, "State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." Ibid. Both of these assertions are created out of whole cloth; contrary to their tenor, neither statement, as applied to statutes of limitations, draws sustenance from

any cases whatsoever. Rather, anything more than a superficial examination of precedent reveals that they are contrary to the established line of decisions of this Court.

This Court has long followed the rule that, unless the United States was suing in its sovereign capacity, "in the absence of any provision of the act of Congress creating the liability, fixing a limitation of time for commencing actions to enforce it, the statute of limitations of the particular State is applicable." *McClaine* v. *Rankin, supra,* at 158. See also *Cope* v. *Anderson,* 331 U. S. 461, 463 (1947). The consistent nature of this history was described in *Auto Workers* v. *Hoosier Cardinal Corp., supra,* at 703–704:

> "As early as 1830, this Court held that state statutes of limitations govern the timeliness of federal causes of action unless Congress has specifically provided otherwise. *M'Cluny* v. *Silliman,* 3 Pet. 270, 277. In 1895, the question was re-examined in another context, but the conclusion remained firm. *Campbell* v. *Haverhill,* 155 U. S. 610. Since that time, state statutes have repeatedly supplied the periods of limitations for federal causes of action when federal legislation has been silent on the question. Yet when Congress has disagreed with such an interpretation of its silence, it has spoken to overturn it by enacting a uniform period of limitations. Against this background, we cannot take the omission in the present statute as a license to judicially devise a uniform time limitation for § 301 suits." (Citations omitted.)

This general policy has been recently reaffirmed with respect to lawsuits brought under 42 U. S. C. § 1981, see *Johnson* v. *Railway Express Agency, supra,* at 462; *Runyon* v. *McCrary, supra,* at 180. Indeed, *Johnson* noted that "the express terms of 42 U. S. C. § 1988 suggest" that there is not "anything peculiar to a federal civil rights action that would justify special reluctance in applying state law." 421 U. S., at 464. The Court fails to point to any case not involving the

United States in its sovereign capacity, in which, the federal statute being silent, the applicable state limitations period was disregarded in favor of either a judge-made limitations period or, as here, no limitations period at all. There is simply no support for the proposition that a federally created right of action should impliedly be without temporal limitations. Indeed, Mr. Chief Justice Marshall, writing for the Court in 1805, observed that a case without a limitations period "would be utterly repugnant to the genius of our laws." *Adams* v. *Woods*, 2 Cranch 336, 342 (1805). Yet, the Court today, without acknowledging the radical nature of its act, creates precisely such a situation.[1]

As for the second point, I can readily concede that the California Legislature did not specifically consider the federal interests underlying the enactment of Title VII. But this argument begs the question. This Court, in 1830, rejected the argument that a state statute of limitations should not apply because the State had not considered the federal policies. It stated, in *McCluny* v. *Silliman, supra,* at 277–278:

> "It is contended that this statute cannot be so construed as to interpose a bar to any remedy sought against an officer of the United States, for a failure in the performance of his duty; that such a case could not have been contemplated by the legislature. . . .

---

[1] In *Campbell* v. *Haverhill*, 155 U. S. 610, 615–616 (1895), this Court stated that it might not be necessary to follow a state statute of limitations which discriminated against or was "passed in manifest hostility to Federal rights or jurisdiction" or which gave such an unreasonably limited time to sue so as to "be within the competency of the courts to declare the same unconstitutional and void." These narrowly delimited exceptions are wholly different from the approach the Court takes today in looking to whether the state statute "will not frustrate or *interfere with* the implementation of national policies." *Ante,* at 367. (Emphasis added.) This open-ended standard would seem to render wholly superfluous the narrow exceptions discussed in *Campbell*.

"It is not probable that the legislature of Ohio, in the passage of this statute, had any reference to the misconduct of an officer of the United States. Nor does it seem to have been their intention to restrict the provision of the statute to any particular causes for which the action on the case will lie. . . .

"Where the statute is not restricted to particular causes of action, but provides that the action, by its technical denomination, shall be barred, if not brought within a limited time, every cause for which the action may be prosecuted is within the statute."

Similar arguments were also rejected in construing § 301 of the Labor Management Relations Act, *Auto Workers* v. *Hoosier Cardinal Corp.*, 383 U. S., at 701–704. And in both *Johnson* v. *Railway Express Agency,* and *Runyon* v. *McCrary,* we followed, without hesitation, state limitations periods even though one would suppose that the federal policies underlying 42 U. S. C. § 1981 were of a magnitude comparable to those of Title VII and even though the general state statute of limitations would hardly have taken these policies into account.

The Court apparently rests its case on the authority of three opinions: *Johnson* v. *Railway Express Agency, Auto Workers* v. *Hoosier Cardinal Corp.,* and *Board of County Comm'rs* v. *United States,* 308 U. S. 343 (1939). None are applicable. *Johnson* did not state, or hint, that "[s]tate limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute." *Ante,* at 367. Rather, *after* concluding that the state limitations period applied, it turned, in a separate section of the opinion, to a question of tolling, 421 U. S., at 465, where the statement that "[a]lthough state law is our primary guide in this area, it is not, to be sure, our exclusive guide," so heavily relied on by the Court today, is found. Nor does *Auto Workers* provide support for the Court: point-

378

ing to the longstanding history of constant interpretation that when the federal statute does not speak, the state limitations period applies, it *rejected* the argument that federal uniformity required a federal limitations period by stating that "there is no justification for the drastic sort of judicial legislation that is urged upon us," 383 U. S., at 703. The last of the three cases, *Board of County Comm'rs*, is also irrelevant. It involved a suit brought by the United States in its sovereign capacity, to which it is clear state limitations period do not apply, 308 U. S., at 351. In any case, the language the Court points to, *id.*, at 351–352, is in the context of a discussion of the absorption of substantive rights and liabilities, not in the context of a statute of limitations at all. The two are decisively different. See *Auto Workers*, 383 U. S., at 703 n. 4; see also *id.*, at 701.

The premises of the majority, then, are supported, not by a slender reed, but by no reed at all. Perhaps the Court's decision can be explained by its apparent fear that the application of the State's limitations period will result in the anomaly of the statute's running before the EEOC is entitled to bring its suit at all. *Ante,* at 369 n. 23. The Court notes, *ante,* at 368: "Unlike the typical litigant against whom a statute of limitations might appropriately run, the EEOC is required by law to refrain from commencing a civil action until it has discharged its administrative duties." If this fear is the motivating reason behind the Court's unusual action today, it rests on a misunderstanding of the nature of the application of a State's limitations period to a federal action brought by the EEOC.

The EEOC may not bring a suit on behalf of a complainant for a violation of Title VII until 30 days after a charge is filed with the EEOC, 42 U. S. C. § 2000e–5 (f) (1) (1970 ed., Supp. V); see *ante,* at 360. It would appear that, as a matter of federal law, the EEOC's cause of action accrues on that date, which is the date on which it first becomes entitled to

sue. See, *e. g., Cope* v. *Anderson*, 331 U. S., at 464; *McAllister* v. *Magnolia Petroleum Co.*, 357 U. S. 221 (1958). In this case, then, the EEOC would have one year, measured from that time, in which to bring suit under Cal. Code Civ. Proc. Ann. § 340 (3) (West Supp. 1977).[2] Thus, the fears expressed by the Court are not well grounded. And while it is true that Congress, in enacting Title VII, chose "[c]ooperation and voluntary compliance . . . as the preferred means of achieving" its goals, *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36, 44 (1974), this is not, in the context of this case, a reason to ignore the state limitations period. We noted, in *Johnson* v. *Railway Express Agency*, 421 U. S., at 465, in response to similar arguments, that the "plaintiff . . . may ask the court to stay proceedings until the administrative efforts at conciliation and voluntary compliance have been completed." The EEOC in this case is given 30 days plus the one-year limitations period; the fact, then, that there is a federal policy for the EEOC to attempt to achieve its goals by voluntary compliance does not seem to me to be a sound basis for ignoring state limitations periods. That policy is not without constraints, as the statute itself acknowledges. § 706 (f)(1).[3]

---

[2] The District Court determined that this is the applicable statute of limitations.

[3] The Act gives the complaining party the right to disrupt the ostensible federal policy of voluntary settlement by filing suit during the "window" period from 180 to 270 days after "the filing of the charge or the expiration of any period of reference [from a state agency]." 42 U. S. C. § 2000e–5 (f)(1) (1970 ed., Supp. V). The reason given for this option was that "the person aggrieved should [not] have to endure lengthy delays if the agency does not act with due diligence and speed." 118 Cong. Rec. 4942 (1972); see *id.*, at 7168. In light of this, it is odd to rely on the policy of "[c]ooperation and voluntary compliance" as invested with such overpowering importance as to sustain a result different from that reached in a long line of precedents prior to today. As we noted in *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36, 44 (1974), the original intent in enacting Title

Given that, I am wholly unable to agree that the utilization of state statutes of limitations, which may be "as short as one year," *ante,* at 371, trenches so severely on the structure or policies of Title VII to warrant this departure from precedent.[4]

## II

In this case, Tamar Edelson filed her charge with the EEOC on December 27, 1970, when it was referred to the California Fair Employment Practices Commission in accordance with the provisions of 42 U. S. C. § 2000e–5 (c). When that agency took no action, the charge was formally filed with the EEOC on March 9, 1971. The EEOC, then, had 1 year and 30 days from that point in which to investigate and attempt to secure voluntary compliance. Since the EEOC is directed to "make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the [formal] filing of the charge," 42 U. S. C. § 2000e–5 (b) (1970 ed., Supp. V), this time period of more than one year would appear ample to ensure that what the Court perceives to be federal policy, including voluntary settlement negotiations, is

---

VII was to establish an administrative procedure whereby the EEOC "would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was *permitted* to file a lawsuit." (Emphasis added.) Whatever validity the administrative-procedure argument may have, then, is greatly weakened after the expiration of that 180-day period.

[4] In both *Johnson* v. *Railway Express Agency,* 421 U. S. 454 (1975), and *Electrical Workers* v. *Robbins & Myers, Inc.,* 429 U. S. 229 (1976), this Court rejected arguments based, in part, on contentions that Title VII plaintiffs should be treated with special deference because Title VII served to vindicate important public interests. I fear that the Court today adopts, *sub silentio,* these previously rejected "Title VII-is-different" arguments as a way of approaching a statute notable for its expanses of congressional silence.

not unduly denigrated.[5]   Yet, here, the EEOC did not file its action in the District Court until February 22, 1974, almost three years after the formal filing of the charge.   Since this is clearly outside the state limitations period, I would hold the action barred, unless the EEOC is to be considered to be suing on behalf of the United States in its sovereign capacity, a matter to which I now turn.

Insofar as the EEOC seeks to recover backpay for individuals, it stands in the shoes of the individuals, and represents them in a suit the individuals would otherwise be entitled to bring, 42 U. S. C. § 2000e–5 (f)(1)  (1970 ed., Supp. V).   Not only is the United States itself not a party to the suit, but the EEOC is vindicating a right which a private party was entitled to vindicate in his own right.   Cf. *Alexander* v. *Gardner-Denver Co., supra,* at 45.   Since the United States is not suing in its sovereign capacity, there is no reason to exempt these suits from the general application of state limitations statutes.   The scope of the relevant inquiry

---

[5] While I agree that it is impossible to read 42 U. S. C. § 2000e–5 (f)(1) (1970 ed., Supp. V) as a time limitation on the EEOC's right to bring suit, the existence of that limitations period on the *individual's* right to bring suit is not without significance.   I can perceive of no reason, and the legislative debates suggest none, why the private party's right to sue is cut off 90 days after it is given, unless it is intended as a form of a limitations period.   Yet, if Congress was concerned with a limitations period when the suit could be brought by the complaining party, it suggests that the Court is wrong in asserting that "the benchmark, for purposes of a statute of limitations" is simply the "commencement of the proceeding before the administrative body."   *Ante,* at 372.   It also leads me to conclude that there is no reason not to allow the normal presumption to operate in this case, by limiting the EEOC's right of action by the most analogous state limitations period. Cf. *Auto Workers* v. *Hoosier Cardinal Corp.,* 383 U. S. 696, 704 (1966).   I see nothing which affirmatively rebuts the longstanding doctrine that "the silence of Congress has been interpreted to mean that it is federal policy to adopt the local law of limitation."   *Holmberg* v. *Armbrecht,* 327 U. S. 392, 395 (1946).

was formed by this Court in *United States* v. *Beebe,* 127 U. S. 338, 344 (1888):

> "The principle that the United States are not bound by any statute of limitations, nor barred by any laches of their officers, however gross, in a suit brought by them as a sovereign Government to enforce a public right, or to assert a public interest, is established past all controversy or doubt. *United States* v. *Nashville &c. Railway Company,* 118 U. S. 120, 125, and cases there cited. But this case stands upon a different footing, and presents a different question. The question is, Are these defences available to the defendant in a case where the Government, although a nominal complainant party, has no real interest in the litigation, but has allowed its name to be used therein for the sole benefit of a private person?"

As this has been interpreted, the decisive fact which excepts the general applicability of these statutes is that the United States is suing to enforce *"its* rights." *United States* v. *Summerlin,* 310 U. S. 414, 416 (1940) (emphasis added); see also *United States* v. *Nashville, C. & St. L. R. Co.,* 118 U. S. 120, 125 (1886); *United States* v. *Des Moines Navigation & R. Co.,* 142 U. S. 510, 538–539 (1892); *United States* v. *Bell Telephone Co.,* 167 U. S. 224, 264–265 (1897); *French Republic* v. *Saratoga Vichy Co.,* 191 U. S. 427, 438 (1903). In *Beebe* itself, the Court acknowledged that "[t]he Government is charged with the duty . . . to protect [the public domain] from trespass and unlawful appropriation . . . ." 127 U. S., at 342. See also *Moran* v. *Horsky,* 178 U. S. 205, 213 (1900). Yet this "interest" was not sufficient to make it a suit by the sovereign, unbounded by a limitations period. While the Government may be interested in the vindication of the policies enunciated in Title VII, cf. *Franks* v. *Bowman Transportation Co.,* 424 U. S. 747, 778 n. 40 (1976)—as,

presumably, it would be interested in vindicating the policies expressed in all congressional enactments—that is not the decisive fact. It is not "interest," but whether the sovereign is suing to recover in its own right. Since here the suit is to recover backpay for an individual that could have brought her own suit, it is impossible to think that the EEOC was suing in the sovereign capacity of the United States. Cf. *United States* v. *Beebe, supra,* at 346. Rather, it is suing as a conduit for the recovery of sums due an individual citizen rather than the public treasury. The Court does not suggest otherwise.

The conclusion should be no different when we turn to the issue of injunctive relief. The decisive fact remains the same: The sovereign is not suing to redress "its" injury, rather it is seeking relief that the complaining individual otherwise would have been entitled to seek. While injunctive relief may appear more "broad based," it nonetheless is redress for individuals. The United States gains nothing tangible as a result of the suit. It does, to be sure, vindicate a congressional policy by seeking to enjoin practices proscribed by Title VII, but, it bears repeating, presumably the Government vindicates some congressional policy *whenever* it sues. That, then, cannot be the test, for it would exalt form (who brings the suit) over substance (whom the suit directly benefits). For these reasons, I am unable to agree with the Ninth Circuit that because the EEOC promotes public policy by its prayer for injunctive relief, it therefore "seeks to vindicate rights belonging to the United States as sovereign," 535 F. 2d 533, 537. This reason does not adequately distinguish a prayer for injunctive relief from a prayer by the EEOC for backpay for individuals.[6]

---

[6] The EEOC is only entitled to bring suit after a complaint has been filed with it. Normally, therefore, it brings suit only after a complaining individual has filed a charge with it. "Individual grievants usually ini-

Since I believe that the EEOC's suit is barred by the running of the statute of limitations in Cal. Code Civ. Proc. Ann. § 340 (3) (West Supp. 1977), I respectfully dissent.

---

tiate the Commission's investigatory and conciliatory procedures." *Alexander* v. *Gardner-Denver Co.,* 415 U. S., at 45. While the 1972 amendments allow members of the EEOC to file charges, 42 U. S. C. § 2000e–5 (b) (1970 ed., Supp. V), this is not the normal method of initiating suit. *Alexander, supra,* at 45. Since this case does not involve the situation where the complaining individual is not the allegedly aggrieved party, I do not need to deal with the question of whether a different result would follow when the EEOC brings suit upon a complaint initiated by one of its members.