Sheila MEAD and Terry Oakley, Individually, and on behalf of all other persons similarly situated, Plaintiffs,

and

Equal Employment Opportunity Commission, Plaintiff-Intervenor,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, L. K. Merz, Howard Gould, Robert Rowe, and John H. Aitken, Defendants.

Civ. Nos. 4–77–16, 4–77–42.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 15, 1977.

See also D.C., 442 F.Supp. 114.

Frank E. Vogel and Frederick W. Morris, Best & Flanagan, Minneapolis, Minn., for plaintiffs.

Grant E. Morris, Jr., Katherine Savers McGovern, David W. Zugschwerdt, E. E. O. C., Washington, D. C., intervenor for plaintiffs.

Timothy R. Thornton, Rider, Bennett, Egan, Johnson & Arundel, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER ON INTERVENTION

MILES W. LORD, District Judge.

This action is presently before the Court on the Motion of the Equal Employment Opportunity Commission for Leave to Intervene, filed on May 23, 1977, and the Motions of defendant United States Fidelity and Guaranty, et al., first, to Limit the Scope of the EEOC's Intervention, filed on June 10, 1977, and, second, to strike the Record, dated August 9, 1977.

Specifically, the EEOC seeks leave to intervene pursuant to the provisions of Rule 24(b)(1) of the Federal Rules of Civil Procedure and Sections 705(g)(6) and 706(f)(1) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e–4(g)(6) and 5(f)(1). The EEOC urges the Court to grant its motion on the grounds of its certification that the case is of general public importance, that the motion is timely, and that intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Defendant USF&G, by its Motion to Limit the Scope of Intervention filed on May 23, 1977, does not oppose the EEOC's intervention into this action if it is limited solely to the issue of the alleged retaliatory discharge of Sheila Mead, in violation of § 704(a) of Title VII, 42 U.S.C. § 2000e–3(a). Thus, by its May 23rd motion, the defendant does urge the Court to limit intervention to Count II, the § 704(a) retaliatory discharge claim of Ms. Mead, and not expand it to Count I, the § 703 sex discrimination charges for the following reasons:

(1) such limited intervention is consistent with the EEOC's involvement in this case to date;

(2) intervention by the EEOC beyond the retaliatory discharge claim should not be permitted until the Court has determined the propriety, appropriateness, and scope of the alleged class that plaintiffs Mead and Oakley purport to represent;

(3) intervention will expand the scope of the issues before the Court; (4) the EEOC's intervention on the basis of its Complaint in Intervention permits it to circumvent the prerequisites of § 706(b) and § 706(f)(1) which the EEOC must satisfy prior to commencing a civil action; (5) intervention will be unduly prejudicial to defendant USF&G.

### Motion to Strike

However, by a motion dated August 9, 1977, and not yet filed with the Clerk, defendant USF&G has confused its stance by presenting the Court with a Motion to Strike the Record. In this document the defendant moves the Court to strike the record with respect to all proceedings which occurred prior to July 12, 1977 (presumably because that was the date of the issuance of the Right to Sue letter on the § 704(a) charge). Defendant contends that the Court lacks subject matter jurisdiction over the § 704(a) claim, because Ms. Mead has failed to exhaust her administrative remedies within the EEOC. The only explanation which defendant proffers in support of this assertion is the following one:

. . . It is possible that through efforts at conciliation at the administrative level some, if perhaps not all, of her specific complaints could have been resolved or compromised—the Congressionally preferred method of resolving Title VII disputes—making certain portions of the record now before the Court irrelevant.

The defendant cites no law to support its assertion that the alleged failure of plain-

tiff Mead to exhaust administrative remedies constitutes a lack of subject matter jurisdiction over the § 704(a) claim.

This matter involving the § 704(a) retaliatory discharge claim originally came on for hearing on January 13, 1977. This Court's Memorandum on Jurisdiction describes the events which transpired prior to July 8, 1977. During that entire time period, including the subsequent period to the date of the filing of the Motion to Strike, defendant USF&G has never indicated to this Court that it desires to enter into conciliation meetings with either the EEOC or Ms. Mead over the § 704(a) retaliatory discharge claim, or, for that matter, any other claim. Nor does the defendant indicate such a desire, in its Motion to Strike.

The Court wishes to stress how untimely this motion is. By its Order dated June 8, 1977, after extensive discussion and argument by counsel, this Court ordered that the trial on the merits of the § 704(a) claim be held on June 20, 1977. Defendant's counsel had not presented this Court with any requests for the continuance of proceedings to permit conciliation.

Then, on Friday, June 10, 1977, in its Answer to the § 704(a) retaliatory discharge claim, filed pursuant to Court order, defendant USF&G alleged that the case was not properly before the Court because there had been no exhaustion of administrative remedies and issuance of a Right to Sue letter. The July 8, 1977, Memorandum on Jurisdiction was a response to that objection and describes in detail the chain of events. In order to allow the defendants every opportunity to prepare their defense, the Court continued the final hearing on the merits until the Right to Sue letter was issued. Trial was set for September 5, 1977, and the parties were requested to try to bring all pertinent motions to the Court's attention by July 18, 1977.

The Right to Sue letter was issued on July 12, 1977. On July 25, 1977, one of defendant's counsel requested the Court, through his Law Clerk, to change the trial date because counsel had commitments during the first two weeks of September.

Counsel for plaintiff agreed, but said he would be unavailable until late September, due to another trial. Counsel for the EEOC preferred a date in August to one in late September. Hence, the parties agreed to keep the dates of August 15–17, 1977, open for trial. By approximately August 3, 1977, the Court's calendar was cleared and the parties were notified that the final hearing was set for August 15, 1977.

Now, for the second time, on the eve of the final hearing on the merits, the defendant moves the Court to order that the hearing on the merits of the § 704(a) claim is improper.

The Memorandum on Jurisdiction adequately details how this Court has had subject matter jurisdiction in all prior proceedings. Therefore, the Motion to Strike the record of all prior proceedings in this case is hereby ordered denied.

To the extent that the defendant's Motion to Strike is prospective, this Court notes that the Right To Sue letter was issued on July 12, 1977. No further administrative actions are required prior to the § 704(a) hearing on the merits, particularly when USF&G has not even indicated that it desires to participate in conciliation discussions. This conclusion is clear from the recent opinion of *Occidental Life Insurance Co. of Calif. v. EEOC*, 423 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). *See Johnson v. Nekoosa-Edwards Paper Co.*, 558 F.2d 841, 843, 847 (8th Cir. 1977). In *Occidental Life* the Supreme Court discussed at length the legislative purpose of the 180-day limitation of § 706(f)(1). 432 U.S. at 358–368, 97 S.Ct. 2447. The Court found that the 180-day limit was not to be a statute of limitations. On the contrary, the 180-day period was intended to preserve the aggrieved party's right of action by granting the aggrieved party the option of withdrawing his or her action from the EEOC administrative process if s/he was dissatisfied with the rate at which the charge was being processed. The Supreme Court concluded,

The legislative history of § 706(f)(1) thus demonstrates that the provision was

intended to mean exactly what it seems to say: that an aggrieved person unwilling to await the conclusion of extended EEOC proceedings may institute a private lawsuit 180 days after a charge has been filed. The subsection imposes no limitation upon the power of the EEOC to file suit in federal court. 432 U.S. at 365, 97 S.Ct. at 2454.

■ In an opinion issued approximately three weeks prior to the Supreme Court's ruling in *Occidental Life*, the Court of Appeals for the Eighth Circuit considered whether a district court had abused its discretion in permitting the EEOC to intervene, when the EEOC had not endeavored to eliminate the allegedly unlawful practices through conciliation. In essence, the Court found that conciliation is not a prerequisite to intervention by the EEOC:

. . . While conciliation is mandatory prior to direct suit by the EEOC . . it is not mandatory under the statutory scheme prior to intervention by the EEOC. 42 U.S.C. § 2000e–5(f)(1). Thus, the EEOC cannot be precluded from intervention because it failed to conciliate. 558 F.2d at 847.

Thus, it was held that conciliation is not a mandatory prerequisite to the establishment of subject matter jurisdiction over a district court action in which the EEOC is an intervenor.

Nevertheless, the Court of Appeals noted that conciliation was meant to be an integral part of the Title VII process. For that reason, it ruled that with respect to the case before it, "while the EEOC is not barred from intervention by its failure to attempt to conciliate, it is under a continuing obligation to attempt to conciliate even after it has intervened in the action." 558 F.2d at 848. The facts in *Nekoosa-Edwards* were that the attorney for the company had contacted the EEOC both by letter and telephone seeking to expedite the conciliation process. The EEOC had failed to respond to these overtures. Subsequently, the EEOC had issued a Right to Sue letter to the plaintiff and her union. The plaintiff and the union filed a suit seeking to represent a class of past and present female employees and applicants and the EEOC was allowed to intervene.

■ It was in such a context where the company desired conciliation and the EEOC failed to respond to the Company's overtures that the Court of Appeals ordered the district court to stay the action for 60 days and to require the EEOC to conciliate. The facts of the case at hand are considerably different from those facing the Court of Appeals in *Nekoosa-Edwards*. In *Nekoosa-Edwards* conciliation still provided a useful opportunity to give the defendant notice, an opportunity to respond to any additional claims revealed by the EEOC investigation, and a chance to avoid court litigation. 558 F.2d 841, at 847. In this case the defendant has received the EEOC's entire file regarding the alleged retaliatory discharge of Ms. Mead (except for some minor deletions by this Court) and has deposed the EEOC investigator, Michael Bloyer. Court litigation has already occurred. The notice and opportunity to investigate have been as broad as conceivable. In addition, as already mentioned, this Court does not recall any request by the defendant to enter into conciliation meetings. Accordingly, to the extent that the defendant's Motion to Strike is prospectively directed to the final hearing on the merits of Ms. Mead's § 704(a) retaliatory discharge claim, it is hereby ordered denied.

*Motion to Intervene on Ms. Mead's §*
*704(a) Retaliatory Discharge Claim*

Likewise, it is hereby ordered that the Motion of the EEOC to Intervene is granted insofar as it relates to the § 704(a) retaliatory discharge claim. In its June 10, 1977 Motion to Limit the Scope of the EEOC's Intervention, defendant USF&G did not oppose such limited intervention.

*EEOC Motion to Intervene on § 703 and*
*All Other Claims: USF&G Motion to*
*Limit Such Intervention*

■ USF&G contends that intervention should be limited to the § 704(a) retaliatory discharge claim of Ms. Mead in order to be

consistent with the EEOC's involvement in this case to date and because intervention will expand the scope of the issues before the Court. Even if these assertions are correct, intervention in this action is permissible. The Court of Appeals for the Eighth Circuit pointed out in *Nekoosa-Edwards*, 558 F.2d 841, at 847, that it would be anomalous not to allow an EEOC suit in intervention to broaden the issues beyond those raised by the charge filed with the EEOC, since the EEOC is not so restricted if it brings a direct suit. Furthermore, in the earlier case of *EEOC v. Mo. Pacific R. Co.*, 493 F.2d 71, 75 (8th Cir. 1974) the Court of Appeals stated that it was "fully confident that [the district court] . . . will permit intervention and enlargement of the scope of the action by the Commission if necessary to the rendering of full and complete justice." Thus, broadening the issues is not a reason for refusing intervention, as along as there is no prejudice to the defendants as a result.

The defendant has not described any grounds for the alleged prejudice which, it claims, would result from the intervention. In fact, the Complaint in Intervention is quite similar to the plaintiffs' original complaint filed on January 13, 1977. That original complaint requests a class action on a nationwide scale against USF&G, alleging sex discrimination in recruitment, hiring, classification, training, promotion, transfer, pay, and pregnancy policies, among other assertions. That complaint, in turn, is based upon a charge filed with the EEOC on about May 5, 1976, and amended on about July 29, 1976. Thus, there is no surprise involved here. The defendant has been apprised of the charges brought by these plaintiffs for well over a year.

■ Defendant USF&G also argues that intervention is untimely because the propriety, appropriateness, and scope of the class action should be determined before intervention is permitted. The contention is simply incorrect. First, the rule in this Circuit is that "the EEOC is precluded from bringing a direct action and relegated to its right to permissive intervention once a private party brings its action." *Nekoosa-Edwards*, 558 F.2d at 847; *Mo. Pacific*, 493 F.2d at 75. To prohibit intervention at this time would be tantamount to keeping the EEOC out of court altogether insofar as this particular defendant is concerned. Second, as already noted, it is permissible for a complaint in intervention to be broader than the original private complaint. In the *Nekoosa-Edwards* case, the Court of Appeals held that despite the district court's decertification of the class, the scope of the EEOC action was not limited to that which the private plaintiffs were permitted to pursue.

■ USF&G next contends that the EEOC's intervention on the basis of its Complaint in Intervention permits it to circumvent the prerequisites of § 706(b) and (f)(1) which the EEOC must satisfy prior to commencing a civil action. In this Circuit, it is a meritless contention to argue that the EEOC is trying to employ the right of permissive intervention to circumvent the administrative prerequisites of the statutes, since the EEOC cannot maintain a separate action once a private party has filed a district court action. As far as exhaustion requirements are concerned, it is a matter of record that the original charges were filed with the EEOC and the Minnesota Department of Human Rights, that the Right To Sue letter on Count I, the nationwide sex discrimination suit was received January 11, 1977, and that the Right To Sue letter on Count II was issued on July 12, 1977.

■ However, there are the conciliation procedures to be considered. This Court shares the view that conciliation should be an integral part of the administrative process. The issue of conciliation and the § 704(a) retaliatory discharge claim of Ms. Mead has been addressed above. But there remains the matter of permitting the conciliation of the balance of the § 704(a) claims, as well as the § 703 action, and any other claims presented by plaintiffs' complaint. With respect to these claims, this Court adopts the approach of the Court of Appeals. *Nekoosa-Edwards*, 558 F.2d 841,

at 847. Accordingly, this action, with the exception of the § 704(a) retaliatory discharge claim of Ms. Mead as outlined in this Court's order of June 8, 1977, is hereby ordered stayed for sixty days from the date of this order and the EEOC is directed to make a prompt offer to USF&G, et al. to conciliate. If the offer is accepted by USF&G, et al., and if, thereafter, all parties fulfill their obligation to conciliate in good faith and if no settlement is forthcoming by the end of the sixty-day period, this Court will enter an order permitting the EEOC to expand its intervention in accordance with its Complaint in Intervention. If USF&G refuses to conciliate and the EEOC communicates this to the defendant in accordance with 29 CFR §§ 1601–23 and to the Court, then the Court will immediately enter an order permitting the EEOC to expand the scope of its intervention.

This Memorandum and Order resolves the question of the EEOC's intervention to the extent that it deals with claims described in the Complaint in Intervention. But this Memorandum and Order does not resolve questions of intervention involving the § 707 Commissioner's Charge, to the extent that the Commissioner's Charge is at variance with the Complaint in Intervention. In the "EEOC Reply to USF&G Opposition to EEOC Motion to Intervene," at page 4, the EEOC discusses the § 707 Commissioner's charge:

> . . . It is a matter of public record that there is a 707 Commissioner's charge pending against USF&G . . . When a determination on that charge is issued, the Commission will offer to conciliate with USF&G. The Commissioner's charge covers broader bases than are contained in plaintiff's complaint, Count I . . .

Since the Court does not know what the content of the § 707 Commissioner's charge is, or whether the § 707 charge conforms to the Complaint in Intervention, no ruling will be made now with respect to the § 707 Commissioner's charge.

IT IS SO ORDERED.