Nathaniel **FERGUSON,** Petitioner,

v.

Larry **LACK,** etc., et al., **Respondents.**

**Civ. A. No. 3:85–0209.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 22, 1985.

Supplemental Opinion and Determinations
March 25, 1985.

Findings, Memorandum Opinion, Order
and Certification June 25, 1985.

Patrick O'Rourke, Nashville, Tenn., for petitioner.

Kevin Steiling, Nashville, Tenn., for respondents.

* " * * * No State shall * * * deprive any person of * * * liberty * * * without due process of

## MEMORANDUM OPINION AND ORDERS

C.G. NEESE, Senior District Judge, Sitting by Designation and Assignment.

■ The petitioner Mr. Nathaniel Ferguson applied *pro se* for the federal writ of habeas corpus. He claims he is in the custody of the respondent-warden pursuant to the judgment of December 6, 1983 of the Circuit Court of Williamson County, Tennessee in violation of the Constitution, Fourteenth Amendment, § 1, Due Process of Law Clause.* 28 U.S.C. § 2254(a). The applicant claims the exhaustion of his state-remedies, 28 U.S.C. § 2254(b), by the presentation of these same issues on the appeal of his judgment of conviction to the Court of Criminal Appeals of Tennessee, which affirmed such judgment on October 30, 1984, and his seeking of permission for further appeal, which was denied by the Supreme Court of Tennessee.

The applicant claims he is entitled to a finding that, upon the evidence adduced at his trial, no rational trier(s)-of-the-facts could have found proof of his guilt of armed robbery beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–2792[10], 61 L.Ed.2d 560 (1979), *reh. den.*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). This, he claims is so, in part, because his conviction was based on eyewitness-identification of him as the armed-robber implicated at his trial following a pretrial-identification by the eyewitness by a photograph which was so impermissibly suggestive as to give rise to a very substantial likelihood of the irreparable misidentification of him. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971[3], 19 L.Ed.2d 1247 (1963).

The applicant claims that he was pointed-out to an eyewitness to the armed-robbery implicated, Mrs. Carol (or Patricia) Gray, its victim, by a law-enforcement officer soon after the commission of the crime and she could not identify him as such; that, pretrial, such eyewitness was shown a book

law * * *." Constitution, Fourteenth Amendment, § 1, *supra*.

of some 35 or 40 "mug-shots," which included a photograph of him, but again did not identify him as her robber; that, although it was standard procedure for a victim to be shown five photographs of possible robbers, this eyewitness was shown one photograph of him which she identified as that of her robber; that the victim had described her robber initially as having facial-hair; that she was also shown pretrial two photographs, one which included facial-hair and the other did not; that he has traditionally worn facial-hair and, with the resulting emphasis on facial-hair, the victim selected his photograph as that of her robber; and that he was not brought to trial until some two years after the crime implicated.

On examination of the face of the applicant's petition and the document annexed to it for purposes of preliminary consideration, Rule 4, 28 U.S.C. fol. § 2254, it not appearing plainly therefrom that the applicant is entitled to no relief in this Court, it hereby is

ORDERED:

(1) that the clerk serve forthwith by certified mail on the respondent-warden and the attorney-general and reporter of Tennessee a copy of the applicant's petition and annexed document and a copy of this order, id.; and,

(2) that such respondent-warden answer the allegations of the applicant's petition and accompanying document and attach thereto such portions of the trial-transcripts believed to be relevant to the issues herein, and otherwise as pertinent under Rule 5, 28 U.S.C. fol. § 2254.

All other matters hereby are RESERVED for further consideration.

SUPPLEMENTAL MEMORANDUM
OPINION AND
DETERMINATIONS

The respondent-warden answered and enlarged the record. *See* memorandum opinion and orders herein of February 22, 1985. The petitioner interposed a document purporting " * * * to bring to the Court's attention such parts of the trial transcript that would support the allegations * * * " of his petition, and he importunes this Court " * * * to consider 'all' evidence in regard to the identification of the petitioner. * * * "

This Court accepts as correct the historical facts as contained in the written opinion of October 30, 1984 in *State of Tennessee,* appellee, v. *Nathaniel Ferguson,* appellant, no. 84–20–III in the Court of Criminal Appeals of Tennessee, *app.permis.app. den.* January 7, 1985 by the Supreme Court of Tennessee in *State of Tennessee,* appellee, v. *Nathaniel Ferguson,* appellant, Williamson Criminal:

* * * [A]t approximately 7:55 P.m. on October 7, 1981, a black man came into the Turntable Record Shop in Franklin [, Tennessee], asked about an album, and then pointed a gun at the store employee, Carol Gray, and ordered her to open the cash register. After taking the money from Mrs. Gray, the robber forced her to go into a back storage room and kneel, where, despite her protests, he took her wedding rings. He then took her into a bathroom and ordered her not to come out for 10 minutes "or I'll shoot you; I will kill you." The items stolen in this robbery included $200.00 from the cash register, the victim's pocketbook and her rings.

\*     \*     \*     \*     \*     \*

Mrs. Gray made positive in-court identification of the defendant [petitioner] both at the preliminary hearing and at trial. At the trial she stated that she was absolutely sure of her identification of the defendant [petitioner], and that "it's not a face you forget." On cross-examination, she testified that the defendant [petitioner] had a mustache at the time of the robbery. At the preliminary hearing, she testified she was not sure whether the defendant [petitioner] had a mustache at the time of the robbery but that he did have facial hair. On redirect at trial, she stated that her identification in court was based upon her observation during the robbery on Octo-

ber 7, 1981, rather than on photographs that she had been shown by the police.

Other testimony at trial established that the defendant [petitioner] and his girlfriend were in the parking lot of the shopping center where the record store was located shortly after the robbery. The defendant [petitioner], who appeared to be in a hurry, was at that time trying unsuccessfully to start his [girlfriend's mother's] stalled car. A local policeman, Officer Tim Taylor, was assisting the defendant [petitioner] [in attempting to restart the stalled car] when the victim's husband reported [to Officer Taylor] the robbery. After obtaining a brief description [from Mrs. Gray] of the robber and calling for backup units, the officer returned to the parking lot, questioned the defendant [petitioner] and checked his identification. According to Officer Taylor, at that point he believed the defendant [petitioner] to be a witness rather than a suspect. * * * The police searched the defendant [petitioner] but their search revealed nothing. However, they did not search the defendant's [petitioner's] girlfriend.

Detective Mike Jordan, of the Franklin Police Department, * * * testified that, two days after the robbery, the victim identified one of the two pictures that he brought her as being [sic] the robber. In that particular photograph, the defendant had a mustache.

\* \* \* \* \* \*

* * * We * * * note that the defendant [petitioner] neither argued that the evidence of the victim's pre-trial identification of the defendant [petitioner] was erroneously admitted at trial nor filed [sic] a pre-trial motion in an effort to suppress this evidence. * * *

*Id.*, op. pgs. 106, 107.

The transcript of the evidence reflects also that, during his investigation on-the-scene of the crime, Officer Taylor accompanied Mrs. Gray to the door of the store and pointed to the petitioner, who was standing some 60 to 75 yards distant from them, and inquired of her if such person was the man who had robbed her. Mrs. Gray replied that she did not know. In this connection, he testified:

"Q. '* * * [S]ince you were on duty, and you were standing there with the victim of a crime who was upset and [had] just had a gun pointed at her, and she told you what this man looked like that had done that to her, and if you had a description of it, and you point to this man, walking across the parking area, and you say, "Could it be him?" Now, if she said "Yes", it's obvious what you would have done, isn't it?'

"A. 'Yes, sir.'

"Q. 'Is there any doubt in your mind what you would have done? You had a gun, you had a badge, and you had a uniform. You would have gone and gotten the man, wouldn't you?'

"A. 'Yes, sir.'

\* \* \* \* \* \*

"Q. '* * * So, it's obvious she didn't say that, did she?'

"A. 'Yes, sir.'

\* \* \* \* \* \*

"Q. 'If she had said that, you would have gone and gotten him and brought him back, wouldn't you?'

"A. 'Yes, sir.'

"Q. '* * * So, she didn't say that, true?'

"A. 'True.'

\* \* \* "

Mr. Jordan searched the robbed store therefor, but discovered no latent fingerprints matching those of the petitioner.

The record reflects also that, in the evening the crime was committed, Mrs. Gray testified that she reviewed a "* * * whole bunch of mug-shots * * *" contained in a "* * * big mug-book * * *." On cross-examination, Mrs. Gray said:

"Q. '* * * And you didn't see the man that did it there, did you?'

"A. 'No, sir.'

"Q. 'And then, do you remember a couple of days later, Detective Jordan['s]

coming into the record shop with a picture?'

"A. 'Yes.'

"Q. 'He was showing it to you—'

"A. 'Yes.'

"Q. '—And, asking you if that was the man?'

"A. 'Yes, sir.'

"Q. 'And, you said what?'

"A. 'Yes, sir.'

"Q. 'And, he showed you just that one picture, didn't he?'

"A. 'Yes, sir.'

Regarding these pretrial experiences with Mrs. Gray, Detective Jordan testified, in part, as follows:

"Q. ' * * * [T]he night of the crime: did you take Mrs. Gray to the police department and show her some mugbooks?'

"A. 'Yes.'

"Q. ' * * * Did that mug-book contain a picture of Nathaniel Ferguson [the petitioner]?'

"A. 'Yes.' [1]

"Q. 'She didn't identify it, did she?'

"A. 'No.'

"Q. 'And then, two days later, did you bring her, at her place of employment, a picture?'

"A. 'Two pictures.'

"Q. 'Two pictures? she said "one", but you say "two"?'

"A. 'Yes, sir.'

"Q. ' * * * And one of those was of Nathaniel Ferguson, wasn't it?'

"A. 'Yes.'

"Q. 'And she identified it, then, didn't she?'

"A. 'Yes.'

"Q. 'Why didn't she identify it the first time she saw it?'

"A. 'I don't know; you're talking about 35 or 40 other pictures of male blacks.'

"Q. 'So, she looked at the picture, right after the crime and didn't identify him, and then looked at two pictures instead of forty or fifty, or however many, and picked one?'

"A. 'Yes.'

\* \* \* \* \* \*

"Q. 'Is that normal police procedure?'

"A. 'Normally, you bring five; but, at that time, I didn't have five.'

"Q. 'You could have gotten five?'

"A. 'Well, it was kind of hard to get five at that time.'

The petitioner claims that the "un-normal" method of showing photographs to Mrs. Gray in the circumstances present " * * * was so unduly prejudicial as fatally to taint his conviction. This is a claim which must be evaluated in the light of the totality of the surrounding circumstance. See *Stovall v. Denno,* 388 U.S. 293, at page 302, 87 S.Ct. 1967, at 1972, 18 L.Ed.2d 1199 [ (1967) ]; *Palmer v. Peyton,* 4 Cir., 359 F.2d 199. * * *" *Simmons v. United States,* 390 U.S. 377, 383, 88 S.Ct. 967, 970–971, 19 L.Ed.2d 1247 (1968). Whether " * * * the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he [the petitioner] was denied due process of law * * *" is a cognizable claim herein. *Stovall v. Denno,* 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972[10], 18 L.Ed.2d 1199 (1967).

" * * * [T]he improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. * * * Even if the police * * * follow the most correct photographic identification procedures and show him [a witness] the picture of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he [the witness] saw. * * * Regardless of

---

1. Detective Jordan appears to have been recalled as a witness by the defense and testified that he was mistaken in this testimony and that there was no picture of the petitioner in the "mug book" at the pertinent time.

how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent * * * courtroom identification. [Footnote reference omitted.] * * *" *Simmons v. United States, supra,* 390 U.S. at 383–384, 88 S.Ct. at 971[1].

" * * * 'There is always cause for concern when guilt or innocence turns solely on identification testimony and nothing else connects the defendant with the crime.' * * *" *Brown v. Davis, Warden,* 752 F.2d 1142, 1145 (6th Cir.1985). " * * * There is no more troubling area of proof than in eyewitness identification. * * * 'The carelessness or superficiality of observers, the rarity of powers of graphic descriptions, and the different force with which pecularities of form or color or expression strike different persons, make recognition or identification one of the least reliable acts testified to even by actual witnesses who have seen the parties in question.' * * * 'Many experts have concluded that convictions based solely on "one eyewitness" identification represent "conceivably the greatest single threat to the achievement of our ideal that no innocent men shall be punished."' * * * " *Id.,* 752 F.2d at 1145, 1146.

" * * * The practice of showing suspects singly to persons for the purpose of identification, and not as a part of a lineup, has been widely condemned [footnote reference omitted]. * * *" *Stovall v. Denno, supra,* 388 U.S. at 302, 87 S.Ct. at 1972. *Simmons, supra,* extends this condemnation to showing photographs of suspects. " * * * However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it * * *." *Id.*

Those circumstances are virtually undisputed in the record herein, *viz.:* Mrs. Gray was shown a multiplicity of photographs the very evening of the crime; the petitioner's photograph may or may not have been among those photographs. In the former event, Mrs. Gray did not identify such as the photograph of her robber. No more than 48 hours later, Mrs. Gray was shown a single photograph (or two photographs); this photograph was of the petitioner (or, if there were two of them, one was a photograph of him). Furthermore, the petitioner had been pointed out to Mrs. Gray moments after she was robbed.

This Court hereby FINDS that the foregoing " * * * photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. * * *" *Simmons v. United States, supra,* 399 U.S. at 384, 88 S.Ct. at 971[3]. It was unnecessary for Detective Jordan to show Mrs. Gray but one photograph (or even two, as he testified); he had a book full of such photographs available to him at the time. Mrs. Gray, having had the petitioner pointed out to her, having been shown a "mug-book" possibly including his picture, and (as she said) having one photograph of him brought to her soon afterward, would have been a dullard indeed not to have gained the impression that the police had concluded the petitioner was her robber.[2]

Of course, a jury accepted Mrs. Gray's identification of the petitioner as her robber. " * * * The reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury. But it is the teaching of *[United States v.] Wade* [388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1948)], *Gilbert [v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d

2. Detective Jordan testified that he took such photograph(s) to Mrs. Gray "because those were the two suspects I had in mind at the time." He admitted also that the photographs he showed Mrs. Gray, when she first identified the petitioner as her robber, included "one fellow with a beard *or* mustache and another fellow with a beard *and* a mustache." He added it was "[j]ust

a careless mistake" that he selected a photograph of a suspect with a mustache after having heard Mrs. Gray testify earlier that she was unsure whether her robber was wearing a mustache.

He testified he staged a lineup at no time during his investigation, because he "didn't think of it at the time."

1178 (1967)], and *Stovall, supra,* that in some cases the procedures leading to an eyewitness identification may be so defective as to make the identification constitutionally inadmissible as a matter of law." *Foster v. California,* 394 U.S. 440, 442, n. 2, 89 S.Ct. 1127, 1128, n. 2[4], 22 L.Ed.2d 402 (1969). Included among the problems of eyewitness identification:

> " * * * Usually the witness must testify about an encounter with a total stranger under circumstances of emergency or emotional stress. The witness' recollection of the stranger can be distorted easily by the circumstances or by later action of the police. Thus, *Wade* and its companion cases reflect the concern that the jury not hear eyewitness testimony unless that evidence has aspects of reliability. * * * "

*Manson v. Brathwaite,* 432 U.S. 98, 112, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140 (1977) (where "considerations urging the exclusion of evidence deriving from a constitutional violation d[id] not bear on the instant problem," 432 U.S. at 114, n. 13, 97 S.Ct. at 2252 n. 13).

The federal-constitutional error which occurred in the petitioner's trial requires that his conviction be vacated and set aside unless, in the setting of his particular case, such error was so unimportant and insignificant that it may consistently with the Federal Constitution, be deemed harmless. *Chapman v. State of California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827[4], 17 L.Ed.2d 705 (1967), *reh. den.,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967).

" * * * [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. * * " *Ib.,* 386 U.S. at 24, 87 S.Ct. at 825[5]. " * * * '[T]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' * * * " *Ib.,* 386 U.S. at 23, 87 S.Ct. at 827.

A preliminary determination must be made, however, before the harmless-error issue may be treated herein: "The petition-er, " * * * '[b]y his failure to enter contemporaneous objections to the identification[ ] or the procedures used in obtaining [it], * * waived his right to attack this evidence on appeal' * * * " to the higher courts of Tennessee. *Williams v. State,* 599 S.W.2d 276, 277 (Tenn.Cr.App.1980), *permis.app. den.* by S.Ct. of Tenn. (1980). Review by this Court of that federal-constitutional claim is barred in this proceeding in habeas corpus unless the petitioner makes an adequate " * * * showing of cause for the noncompliance [with the aforementioned procedural rule of Tennessee] and some showing that actual prejudice resulted from the alleged constitutional violation. * * * " *Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977), *reh. den.,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977).

It is patent that the petitioner has shown that he suffered actual prejudice from the admission against him of the testimony of Mrs. Gray relating to her identification of him as the person who robbed her as charged. No other witness thus identified the petitioner. Had Mrs. Gray not been permitted to so testify, there was no evidence that the petitioner was the person who robbed Mrs. Gray.

As the aforenamed intermediate criminal appellate stated as further historical facts herein:

> * * * The evidence, as summarized above, was sufficient from which a rational trier of fact could conclude that the defendant [petitioner] was guilty beyond a reasonable doubt of the crime of armed robbery. Rule 13(e), T.R.A.P. [Tennessee Rules of Appellate Procedure], *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979).
>
> * * * * * *
>
> * * * [T]his standard has been fully satisfied. We note that *the victim positively identified the* defendant *[petitioner] in court on two separate occasions.* At the preliminary hearing, although she was unsure of whether the robber had both a mustache and a beard, she posi-

tively stated that he had facial hair. At trial, she stated that he had both a mustache and a beard. *She indicated no uncertainty in identifying the* defendant *[petitioner] on either occasion as the man who robbed her on the night of October 7.* These discrepancies in her description of the robber are minor in nature and merely went to the weight of her testimony. * * * Moreover, these inconsistencies were known and fully exposed by defense counsel at trial, *thereby enabling the jury to properly weigh the victim's in-court identification of the robber.*

\* \* \* \* \* \*

*State of Tennessee, appellee, v. Nathaniel Ferguson,* appellant, *supra,* at p. 108 (emphases supplied by the present writer).

■ The Court is unable to glean from the record and exhibits herein any cause for the petitioner's failure to object to the identification-testimony of Mrs. Gray, as it related to him, or to the unconstitutional method of aiding that testimony by the showing pretrial by the policeman of photographs to Mrs. Gray. The appellate-brief of defense-counsel seems to stress the unreliability of her identification testimony in the light of the test delineated in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), especially as it relates to the accuracy of the prior description of the criminal, *id.,* 409 U.S. at 199–200, 93 S.Ct. at 382. Perhaps, it may be speculated, he thought that the suggestive-procedures would " * * * viitate the weight of the evidence at trial and [prompt] the jury [to] discount such evidence * * *," *Manson v. Braithwaite, supra,* 432 U.S. at 112, n. 12, 97 S.Ct. at 2252, n. 12, and that he thought also that the interests of his client could be served best by emphasizing in trial, as he did in his address to the appellate-judges, that " * * * the statements by the eyewitness victim as to the identity of her assailant [we]r[e so] conflicting as to constitute reasonable doubt that the de-

fendant [petitioner] committed the crime of which he st[ood] * * * " accused.

Speculation will not suffice, however, for the necessity that the petitioner show sufficient "cause" for the petitioner's waiver of his federal-claim as to his " * * * contentions as to federal law which were *not* [as in orig.] resolved on the merits in the state proceeding due to the [petitioner's] failure to raise them there as required by state procedure. * * * " *Wainwright v. Sykes, supra,* 433 U.S. at 87, 97 S.Ct. at 2507. Accordingly, upon a review of the transcript and record of the proceedings in the state courts herein, it hereby is

DETERMINED that an evidentiary-hearing is required to ascertain whether "cause" as well as "actual prejudice" are present so as to enable this Court to entertain the application of the petitioner. *Id.,* 433 U.S. at 84, 97 S.Ct. at 2505.

The clerk will assign such a hearing,[3] pending which the aforementioned "harmless-error" issue and all other issues are RESERVED. It hereby is DETERMINED also that the interests of justice require that the petitioner be furnished representation pursuant to the Plan for such and that he is unable financially to obtain legal representation. 18 U.S.C. § 3006A(g). The acting federal-defender of this District will provide such or cause it to be provided.

## FINDINGS, MEMORANDUM OPINION, ORDER AND CERTIFICATION **

■ An evidentiary-hearing was conducted by this Court on June 21, 1985 to accord the petitioner the opportunity of making an adequate showing of the cause of his trial-attorney's noncompliance with the procedural-requirement in Tennessee, that criminal defendants enter contemporaneous objections to, or move to suppress, identification-evidence or the procedures utilized in obtaining such evidence. *See* memorandum opinion and determinations of March

---

**3.** The clerk will ascertain when appointed-counsel is prepared to proceed.

** Appeal dismissed voluntarily, order of December 27, 1985, 6th Cir. in no. 85–5643.

25, 1985 herein. At its conclusion, the matter was taken under advisement.

The attorney appointed to represent Mr. Ferguson in his criminal trial was John Caulkins, Jr., Esq., formerly a deputy attorney general of Tennessee, with five years of private-practice of law. He testified that he recognized at the preliminary-hearing for Mr. Ferguson the constitutional "problem" associated with Mrs. Carol Gray's eyewitness-identification of the petitioner.

Mr. Caulkins stated he thought Mr. Ferguson's was "a close case" because Mrs. Gray was the only identifying witness against the petitioner and put him to trial because of that thought. He said he gave thought to filing a motion to suppress the identification-evidence, but his familiarity with similar rulings of the judge who would preside at the trial led him to think that such a motion would not be successful.

This attorney deemed his best chance of obtaining a favorable verdict from the jury would be not to "tip his hand" pretrial so that adjustments might be made in the testimony of the investigating detective, and that the latter's testimony would be "helpful" to his client's cause if his trial-tactics did not become known in advance.

The record-evidence herein reveals sharp discrepencies in the trial-testimony of Mrs. Gray as compared with her testimony at the preliminary-hearing for Mr. Ferguson, and his attorney was able to emphasize these differences by playing before the jury a recorded-transcript of her earlier testimony. Furthermore, it reflects that the detective, Mr. Mike Jordan, testified initially that Mrs. Gray did not identify the petitioner from a "whole bunch of mug shots" in a "big mug book" on her first confrontation with his photograph.

With these developments, any lawyer would have comprehended the feeling Mr. Caulkins, Esq. might have had that he had adopted pretrial the correct tactic. His forebodings were corroborated to an extent when Mr. Jordan returned to the witness stand and testified that the petitioner's photograph was not among those shown originally to Mrs. Gray after all.

Nevertheless, the petitioner's attorney is now of the opinion, in after-sight, that he should have "thought through" more thoroughly the preservation of the identification-issue for purposes of appeal and have devoted more time than he did to considering the long-range effect of having waived his client's rights to appellate-consideration of this issue. Certainly, it was not "cause" to waive the state procedural rules because the attorney predicted the trial judge could not be expected to grant his suppression claim: "* * * If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not by-pass the state courts simply because he thinks they will be unsympathetic to the claim. [Footnote reference omitted.] * *" *Engle v. Isaacs*, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573[11], 71 L.Ed.2d 783 (1982).

This Court FINDS from the hearing-evidence that the petitioner's attorney forewent the required procedural rules of Tennessee as a matter of trial-tactics. "* * * Under our adversary system once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney * * *," *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976), and the petitioner has the burden herein "* * * to be bound by the trial judgments of his lawyer * * *," *Wainwright v. Sykes*, 433 U.S. 72, 91, n. 14, 97 S.Ct. 2447, 2508, n. 14, 53 L.Ed.2d 594 (1977); *reh. den.*, 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977).

Thus, counsel for petitioner chose to omit his due-process argument in favor of pursuing other avenues of defense, and that tactical-decision does not constitute the necessary "cause" for waiver of his federal-claim as to his contentions as to federal law which were not resolved on the merits in the state courts because of his failure to raise them there as required by the procedure of Tennessee. For such reason, review by this Court of the petitioner's feder-

al-constitutional claim is barred in this proceeding. *Wainwright v. Sykes, supra,* 433 U.S. at 84, 97 S.Ct. at 2505.

Consideration of the petitioner's claim being barred, he hereby is

DENIED all relief. Rule 58(1), F.R. Civ.P.

Should the petitioner give timely notice of an appeal from this order and the judgment to be entered thereon, he is authorized to proceed thereon in forma pauperis. Rule 24(a), F.R.App.P. Any such notice will be treated also as an application for a certificate of probable cause, Rule 22(b), F.R.App.P., which will NOT issue because of the foregoing factual finding.