Vivian WILLIAMS, et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. No. 86–204 LE.

United States District Court,
D. Oregon.

May 8, 1987.

On Motion for New Trial
June 16, 1987.

Robert K. Udziela, Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, Or., for plaintiffs.

Leon B. Taranto, Trial Atty., U.S. Dept. of Justice, Washington, D.C., Charles Turner, U.S. Dist. Atty., Portland, Or., for U.S.A.

LEAVY, Circuit Judge, Sitting by Designation.

## I. Introduction

The plaintiffs are a group of women who were formerly employed by Bumble Bee Seafoods Co., Inc. (Bumble Bee) in Astoria, Oregon. They filed a complaint on February 18, 1986, alleging that the United States was negligent in its implementation of a consent decree entered into between Bumble Bee and the Equal Employment Opportunity Commission (EEOC). Under the consent decree, Bumble Bee established a fund to remedy alleged sex discrimination at its Astoria plant. The plaintiffs claim that because of the negligence of the United States, they received less money than they were entitled to under the decree, or were not allowed to participate in the settlement at all.

The United States filed a motion to dismiss, or in the alternative, for summary judgment. In its motion to dismiss the government presented matters outside the pleading in the form of affidavits and exhibits. Similarly, in their response, the plaintiffs presented depositions and exhibits. Therefore, pursuant to Federal Rule of Civil Procedure 12(b), the motion is treated as one for summary judgment under Federal Rule of Civil Procedure 56.

Summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The parties are not in dispute as to the facts.

## II. Facts

The Commissioner of the Equal Employment Opportunity Commission filed a charge against Bumble Bee for employment discrimination, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* The EEOC conducted an investigation and issued an administrative determination that reasonable cause existed to believe discrimination had occurred. When efforts to conciliate the matter failed, the EEOC in September 1978 filed a complaint in this court alleging that Bumble Bee had discriminated against certain employees at its Astoria facility based on their gender. The EEOC was the sole plaintiff, and it sought injunctive relief, back pay, and costs.

After extensive discovery, the EEOC decided it was in its best interests to conclude the action and enter into a consent decree. On March 1, 1983, this court approved the consent decree, finding that it was in the best interests of the parties and would further the Title VII objectives of equal employment opportunity.

The decree obliged Bumble Bee to establish a $350,000 fund and specified how it was to be distributed to unnamed female former employees of Bumble Bee. The fund would pay for valid claims and the costs of administering the decree. The decree specified criteria for eligibility.

The decree also described in detail the process by which Bumble Bee and the EEOC would notify potential claimants of the fund and provide them with information and claim forms. The decree required Bumble Bee to mail by first class a claim form and instructions to the last known address of all females who worked in the cannery, warehouse, or cold storage operation during the period January 4, 1976 to December 31, 1976. The court provided the form and instructions to be used. There is no evidence that Bumble Bee did not carry out this obligation, and the plain-

tiffs do not allege in their complaint that Bumble Bee did not do so.

The decree required Bumble Bee to publish a notice in the Portland daily newspaper and the Astoria daily and weekly newspapers advising potential claimants of their right to file a claim. The court again provided the notice to be used. The notice was to be published one day a week for three consecutive weeks. Bumble Bee submitted to the EEOC affidavits from the Portland *Oregonian,* the *Daily Astorian,* and the *Columbia Press* stating that the notices had been published according to the decree.

The decree also required the EEOC to employ an individual to respond to telephone inquiries concerning the claim procedure. The telephone number was to be indicated on both the claim instructions and the newspaper notice, and was to be available from 8:30 a.m. to 5:00 p.m., Monday through Friday, for a 60 day period following the mailing of the forms and publication of the newspaper notice. The EEOC carried out its responsibility by hiring Patricia Reale to operate the phone bank out of her home. The EEOC attorney handling the case, Sheila McKinnon, interviewed only Reale for the position. Reale lived in Seattle, the location of the EEOC office, and thus the phone number was a Washington one, though it was toll free. Reale, in turn, hired Ann Pettigrew to assist her. McKinnon did not interview Pettigrew, but met with both her and Reale to instruct them on how to respond to the telephone inquiries.

The instruction lasted approximately one hour. McKinnon went over the consent decree terms with Reale and Pettigrew and reviewed the claim form and instructions. They were told that they were only to assist potential claimants in filling out the forms and obtaining additional forms, but that they were not to offer advice or an opinion on the merits of any particular claim. They were to encourage all potential callers to submit a claim, and to forward all substantive questions to McKinnon's office. Reale and Pettigrew were to be paid from the fund established by Bum-

ble Bee. The total administrative cost was $10,437.25.

McKinnon used an additional method to find former employees, which was not required by the decree. Her staff searched the phone books of Astoria and the surrounding area to find those whose mailed claim forms had been returned because they were no longer at that address. In her deposition, McKinnon states they were fairly successful in finding these persons or their relatives.

According to McKinnon's affidavit, approximately 600 female former employees of Bumble Bee were potentially eligible to share in the fund. Sixteen to eighteen percent of these actually filed claims. McKinnon stated that in her experience with the EEOC, anything over fifteen percent is considered a good response, particularly considering that Bumble Bee had gone out of business in Astoria several years prior to the consent decree.

On September 30, 1983, this court entered an order of distribution, in which a gross total of $248,056.08 was distributed to eighty-five women.

### III. The Plaintiffs' Claims

The plaintiffs state that they are not dissatisfied with the EEOC's settlement of the case or with the consent decree. Rather, they are dissatisfied with the EEOC's implementation of the decree. However, the focus of the plaintiffs' claims shifts from their complaint to their response to the defendant's motion to dismiss. In their complaint, brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* (FTCA), the plaintiffs allege that the government failed to implement correctly the consent decree, and thus was negligent, by:

(1) not causing timely newspaper notice of the claim process;

(2) not causing the establishment of an adequate phone bank for claim information;

(3) not training the phone bank operator to respond correctly to requests for claim information;

(4) not employing the phone bank operator, but instead allowing Bumble Bee to employ and direct the operator; and

(5) failing to bring these alleged acts of noncompliance to the court's attention before the signing of the distribution order.

In their response to the motion to dismiss, the plaintiffs do not pursue their first allegation at all. They directly contradict their fourth allegation by claiming that Reale and Pettigrew were employees of the EEOC, and thus the United States is liable for any negligence by them on a respondeat superior theory. The plaintiffs recite some facts which relate to their second and third allegations but do not show how these facts demonstrate negligence causing harm to the plaintiffs. For example, the plaintiffs state that McKinnon did not consider any alternative sites to Seattle for the phone bank, since she believed she could more easily train the operators where her own office was. They also state that McKinnon did not examine Reale's educational or work background when she interviewed her for the phone operator position. Rather, an employee of the EEOC suggested that McKinnon use his wife, Patricia Reale. The plaintiffs also point out that McKinnon did not check to see if the phone lines were being used for calls other than the claim calls.

The plaintiffs imply some additional acts of alleged negligence by the defendant, though again these are not tied to any injury to the plaintiffs. For example, the plaintiffs state that McKinnon relied on Bumble Bee's attorney's representation that they mailed the notices as required by the consent decree. The plaintiffs also state that McKinnon did not consider alternatives to the phone bank and did not consider using radio or television ads.

Finally, the plaintiffs allege negligence by the defendant on two theories. First, the plaintiffs assert they stand in a client-attorney relationship with the EEOC, and that the EEOC was negligent in its legal representation of the plaintiffs. Secondly, the plaintiffs allege that the EEOC was negligent in carrying out its regulatory responsibilities pursuant to 42 U.S.C. 2000e–5(i) in implementing the consent decree. The court will discuss these theories separately.

## IV. Discussion

The United States is immune from suit except as it consents to be sued, and the terms of its consent define the court's jurisdiction to entertain the suit. *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). The FTCA is a limited waiver of sovereign immunity. *Dalehite v. United States*, 346 U.S. 15, 30–36, 73 S.Ct. 956, 965–68, 97 L.Ed. 1427 (1953). Among other restrictions, the FTCA confers jurisdiction on the federal courts of tort claims against the United States only to the extent that a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §§ 1346(b), 2674. Also, the federal courts do not have jurisdiction over the discretionary functions of federal agencies and employees. 28 U.S.C. § 2680(a).

## A. Negligence Based on Attorney-Client Relationship

The EEOC did not have an attorney-client relationship with the potential claimants against Bumble Bee. Therefore, even if the EEOC was negligent in carrying out the consent decree, it owed no duty to the plaintiffs and thus is not liable under this theory.

As originally enacted in 1964, Title VII limited the EEOC's function to the investigation of employment discrimination charges and conciliation efforts. Enforcement could only be accomplished by a private law suit by an aggrieved person. In 1972, Congress amended Title VII to empower the EEOC to bring suit on its own against a private employer alleged to have violated the Act. *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 357, 97 S.Ct. 2447, 2450, 53 L.Ed.2d 402 (1977). The amendments did not substitute the EEOC action for that brought by a private person. Rather, the retention of a private

right of action provided an aggrieved party the opportunity to pursue his or her own remedy under Title VII "where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution." *Id.* at 365–66, 97 S.Ct. at 2454 (quoting 118 Cong.Rec. 7168 (1972)).

The purpose of the 1972 amendments was to implement the public interest and to bring about more effective enforcement of private rights. *General Telephone Co. v. EEOC,* 446 U.S. 318, 325–26, 100 S.Ct. 1698, 1703–04, 64 L.Ed.2d 319 (1979). Congress intended that an EEOC action supplement, not replace, private action. *Id.* at 326, 100 S.Ct. at 1704. "[T]he EEOC is not merely a proxy for the victims of discrimination ..." *Id.* This dual mechanism for enforcing Title VII was established in part because the EEOC's interests may not always coincide with those of the aggrieved employees:

> [U]nlike the Rule 23 class representative, the EEOC is authorized to proceed in a unified action and to obtain the most satisfactory overall relief even though competing interests are involved and particular groups may appear to be disadvantaged. The individual victim is given his right to intervene for this very reason. The EEOC exists to advance the public interest in preventing and remedying employment discrimination, and it does so in part by making the hard choices where conflicts of interest exist.

*Id.* at 331, 100 S.Ct. at 1707.

Where the EEOC, as in the Bumble Bee case, files suit in its own name seeking relief on behalf of a group of individuals for discrimination, it is not undertaking class representation. "[T]he EEOC's enforcement suits should not be considered representative actions subject to Rule 23.... When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *Id.* at 326. The Ninth Circuit has recognized that the EEOC is not in an attorney-client relationship with aggrieved employees when it brings enforcement actions or enters into consent decrees pursuant to Title VII. *Bratton v. Bethlehem Steel Corp.,* 649 F.2d 658, 669 (9th Cir.1980).

Therefore, I find that as a matter of law, the United States did not owe a duty to the plaintiffs because the EEOC did not have an attorney-client relationship with these plaintiffs.

**B. Negligence Based on the EEOC's Implementation of the Consent Decree**

I find it unnecessary to decide whether the discretionary function exception to the FTCA precludes holding the United States liable for any alleged EEOC negligence, because I find that the plaintiffs have failed to establish a negligence claim.

As stated by the Supreme Court, Federal Rule of Civil Procedure 56(c):

> ... mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The plaintiffs have failed to show that the EEOC breached a duty causing injury to these plaintiffs.

The plaintiffs' response to the defendant's motion to dismiss fails to support their first negligence allegation, regarding placement of the newspaper notices. Moreover, exhibits submitted by both parties demonstrate that the consent decree's terms concerning the newspaper notices were fully carried out. (Defendant's Motion to Dismiss, McKinnon Affidavit, ¶ 5 and attachment 1; Plaintiffs' Response, Exhibit A, pp. 13, 28–29, 53–55, 56).

The plaintiffs' response to the motion to dismiss reverses their position on their fourth negligence allegation, concerning for whom the telephone operators worked. The plaintiffs' latest position is that the operators were employees of the United States, whereas the defendant asserts they were independent contractors. It is unnec-

essary to resolve this disagreement, since the plaintiffs concede the operators were not employed by or under the direction of Bumble Bee. The consent decree provided that the EEOC hire the phone operators, and the exhibits submitted by both parties demonstrate that the EEOC carried this out. (Defendant's Motion to Dismiss, McKinnon Affidavit, ¶¶ 6–13, Reale Declaration, Pettigrew Declaration; Plaintiffs' Response, Exhibits A, B, C).

■ Thus, only the second and third negligence allegations remain, and the fifth one to the extent the second and third allegations were not brought to the court's attention. The second allegation claims the defendant did not establish an adequate phone bank. "Adequate" is not defined, nor is there any description as to how the phone bank was inadequate to implement the consent decree. In fact, the exhibits submitted by both parties demonstrate that the phone bank was established and operated precisely as required by the consent decree. (Defendant's Motion to Dismiss, McKinnon Affidavit, Reale Declaration, Pettigrew Declaration; Plaintiffs' Response, Exhibit A, pp. 31–39, 44–45, 55, 61–66, Exhibits B, C).

■ The third allegation claims the defendant did not train the phone operators to respond correctly to requests for claim information. Again, the plaintiffs do not describe what was improper about the training. More fundamentally, the plaintiffs do not even allege, nor is there evidence to support, that any of them were given incorrect information by the phone operators. In their response, the plaintiffs imply that there was something inappropriate about McKinnon's hiring of Reale, since she did not interview anyone else, she did not know much about Reale's background, and she did not monitor the phone bank on a daily basis. However, the plaintiffs do not draw any connection between this and Reale's performance. The exhibits do demonstrate that Reale and Pettigrew were trained by McKinnon, that they fully carried out their responsibilities under the consent decree, and that they were in fairly close contact with the EEOC office. (De-

fendant's Motion to Dismiss, McKinnon Affidavit, Reale Declaration, Pettigrew Declaration; Plaintiffs' Response, Exhibits A, B, C).

■ Finally, the plaintiffs raise some new negligence allegations in their response. They state that McKinnon did not propose alternatives to the phone bank, such as going through the union hall. She also did not consider radio or television ads. However, these methods were not provided for in the consent decree. The plaintiffs are not challenging the terms of the consent decree, as they state several times. Therefore, such allegations are irrelevant.

The plaintiffs have failed to present evidence establishing that a genuine issue of fact exists as to any of its negligence allegations. They have failed to produce evidence of any negligence by the defendant causing injury to the plaintiffs. Therefore, summary judgment in favor of the defendant and against the plaintiffs is appropriate.

IT IS ORDERED that the defendant's motion for summary judgment is GRANTED.

## ON MOTION FOR NEW TRIAL

This court entered an order in this action on May 8, 1987 and a judgment on May 11, 1987, granting the defendant's motion for summary judgment. The plaintiffs now move for a new trial or amendment of the judgment, pursuant to Federal Rule of Civil Procedure 59.

■ The plaintiffs' motion is denied. The additional authorities cited by the plaintiffs do not alter the legal basis for the court's decision. In *Fazzolari v. Portland School District No. 1J,* 303 Or. 1, 17, 734 P.2d 1326 (1987), the Oregon Supreme Court stated:

[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected

interest of the kind of harm that befell the plaintiff.

The plaintiffs invoked a relationship between them and the federal government which allegedly gave rise to a duty, that of an attorney-client relationship. As stated in this court's prior order, no such duty existed between the Equal Employment Opportunity Commission and the plaintiffs. Even if the plaintiffs' claim was based on common law negligence, thus resulting in a foreseeability standard, this court would still find, under *Fazzolari*, that "no duty" is a full defense. *Id.*, 303 Or. at 10, 734 P.2d 1326; *Kimbler v. Stillwell*, 303 Or. 23, 26, 734 P.2d 1344 (1987). The defendant's conduct did not create a foreseeable risk to any protected interest of the plaintiffs.

Moreover, as stated in my prior order, "the plaintiffs have failed to establish a negligence claim" and "failed to present evidence establishing that a genuine issue of fact exists as to any of its negligence allegations." Contrary to the plaintiffs' position, this is a legal conclusion, not a factual one.

IT IS ORDERED that the plaintiffs' motion under Fed.R.Civ.P. 59 is denied.