# Relationship Between Department of Justice Attorneys and Persons on Whose Behalf the United States Brings Suits Under the Fair Housing Act

When the Department of Justice undertakes a civil action on behalf of a complainant alleging a discriminatory housing practice under the Fair Housing Act, Department attorneys handling the action do not enter into an attorney-client relationship with the complainant, nor do they undertake a fiduciary obligation to the complainant.

Because no attorney-client relationship is established in such undertakings, no retainer agreement between the complainant and the Department attorneys should be entered into.

January 20, 1995

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

You have requested that this Office clarify the legal relationship between Department attorneys and individuals on whose behalf the United States institutes civil actions pursuant to the Fair Housing Act, as amended. 42 U.S.C. §§ 3604–3616a.

## Description of the program

The Fair Housing Act uses the resources of the federal government to address housing discrimination against private persons. Persons alleging a discriminatory housing practice may file a complaint with the Secretary of Housing and Urban Development ("the Secretary" or "HUD"), or the Secretary may undertake action at his or her own behest. The statutory structure attempts to ensure that such complaints are vigorously investigated and, if meritorious, pursued by the government. Under § 3610(e), the Secretary may authorize a civil action for appropriate temporary or preliminary relief, to be filed by the Department of Justice. When a complaint is filed with HUD under § 3610, the complainant, respondent, or person on whose behalf a complaint was filed may elect to have the claims asserted in that charge heard in a civil action under § 3612(o). Subsection 3612(o) provides that, if an election to proceed in a civil action is made: "the Secretary shall authorize, and not later than 30 days after the election is made the Attorney General shall commence and maintain, a civil action *on behalf of* the aggrieved person in a United States district court seeking relief under this subsection." (Emphasis added.)

Section 3613 grants aggrieved private persons a cause of action, whether or not the person has filed a complaint administratively. However, if the Secretary has already obtained a conciliation agreement with the consent of the aggrieved

1

person, then the aggrieved person may only file a suit to enforce the terms of such an agreement.

Subsection 3614(a) authorizes the Attorney General to file suits alleging a pattern or practice of violations of the chapter; subsection (d) of this section authorizes the courts, in either a pattern or practice case or a case filed upon a referral by the Secretary, to award injunctive relief, damages to the person aggrieved, civil penalties, and attorneys fees to parties other than the United States.

## Relationship between Department attorneys and the complainant

We believe that when the Department of Justice undertakes a matter "on behalf of" a complainant, the Department attorney does not enter into an attorney-client relationship with the complainant. Likewise, when the Department files a pattern or practice case under §3614, seeking damages on behalf of aggrieved persons, no attorney-client relationship is established with those for whom damages are sought.

The structure of the statute compels this conclusion. Congress recognized not only that the government's interests in large measure coincide with those of aggrieved parties, but also — and importantly for our purposes here — that the interests of the complainant or aggrieved persons may diverge from that of the government. Such potential divergence of interest would be inconsistent with interpreting the statute as establishing attorney-client relationships between the government and the complainants on whose behalf the Department litigates. First, the statute has separate sections for enforcement by private persons under §3613 and enforcement by the Attorney General under §3614. More specifically, §3613(a) illustrates that Congress recognized the potential for diverging interests within the statute itself. It provides that an aggrieved person may file a civil action, regardless of whether an administrative complaint was filed under §3610.[1] Similarly, §3613(e), which provides for intervention by the Attorney General in suits brought by private persons, and its companion provision, §3614(e), which provides for intervention by aggrieved persons in suits brought by the Attorney General, indicate that the Attorney General may have separate interests or positions from those advanced by the complainant. Likewise, §3612(o)(2) provides that an aggrieved person may intervene as of right in any administrative action filed by the Secretary. Finally, if the Department (or a HUD attorney, in the case of an administrative filing) were the attorney for the complainant, Congress would not have needed to provide for the complainant's individual representation, or for court appointment of an attorney for the complainant under §3613(b).

Moreover, Congress nowhere in the Fair Housing Act itself decreed or authorized the establishment of an attorney-client relationship between the Department

---

[1] The only limit on filing in court in such a circumstance is that the aggrieved person may not file if a conciliation agreement has already been obtained with the consent of the aggrieved person, or if the administrative law judge has already commenced a hearing on the record. §3613(a)(2)–(3).

attorney and the complainant or aggrieved person. Nor have we located anything in the legislative history that would indicate that Congress intended the Department to serve as the complainant's personal attorney, rather than the attorney for the government. Congress apparently intended that the government use its resources to vindicate civil rights with respect to housing, and to attempt to achieve redress for the complainants who bring violations to the government's attention, as it has in other areas of civil rights. Yet the Fair Housing Act does not provide personal attorneys for those who believe that they have suffered housing discrimination.

Other civil rights laws attempt to involve the government in the promotion of civil rights by mustering the government's litigative resources on behalf of private individuals or groups of aggrieved individuals. In those situations, courts have not found that an attorney-client relationship was established between the government and those for whom the government sought relief. *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 669 (9th Cir. 1980); *Williams v. United States*, 665 F. Supp. 1466, 1470 (D. Or. 1987).[2] Courts have also recognized that the United States has broader and somewhat different litigative interests from that of the individual complainants or aggrieved persons. *General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 324, 326 (1980); *United States v. School Dist. of Ferndale*, 577 F.2d 1339, 1345 n.9 (6th Cir. 1978) ("The District Court suggested that specificity was required in the complaint because the EEOA's purpose was to vindicate 'the individual rights of those discriminated against' as opposed to a 'national policy of school desegregation.' This reading is totally inconsistent with the Act's statement of purpose . . . .") (citation omitted); *EEOC v. Whirlpool Corp.*, Local 808, 80 F.R.D. 10 (N.D. Ind. 1978).

In the few situations in which Congress has provided that attorneys employed by the government shall serve as the attorney for a party other than the government, its intent that the attorneys represent a party other than the government itself is manifest in the statute. For example, judges advocate of the Army, Navy, Air Force, and Marine Corps, and law specialists of the Coast Guard may be detailed to serve as defense counsel, 10 U.S.C. § 827, pursuant to the defendant's "right to be represented at that investigation by counsel." 10 U.S.C. § 832(b). Within the statute providing for government-provided counsel through judges advocate, Congress included provisions addressing conflicts of interest, to ensure that the judge advocate truly does represent the accused, rather than broader governmental interests. *Id.* § 827(a)(2). Likewise, attorneys employed by the Fed-

---

[2] In *Gormin v. Brown-Forman Corp.*, 133 F.R.D. 50 (M.D. Fla. 1990), the court held that there was no attorney-client relationship with aggrieved employees listed in the complaint, although the decision left open the possibility of establishing such a relationship if an aggrieved person filed a complaint with the agency. We believe that under the Fair Housing Act, even if an aggrieved person did file a complaint with the Secretary and the case were referred to the Department, the Department would not formally represent the complaint in the Department's action. This issue was not reached by the District Court in *Gormin.*

eral Public Defender Organization clearly do not represent the government in litigation, but represent the defendants. 18 U.S.C. § 3006A(g)(2)(A).

The Attorney General also may provide that an attorney-client relationship is established with a party other than the government itself. With respect to formal representation of government employees, regulations establish that any such representation undertaken by the Department is protected by the attorney-client privilege, although the employee must be informed that the government attorney will not assert any legal position on behalf of the employee that is not in the interests of the United States. 28 C.F.R. § 50.15(a)(3), (a)(8)(ii) (1994). The Attorney General has not authorized Department attorneys to undertake representation of Fair Housing Act complainants. Due to the absence of clear statutory or regulatory authority to represent a party other than the government itself, as provided by Congress and the Attorney General in other areas, we conclude that neither Congress nor the Attorney General has authorized the establishment of formal, attorney-client representation of complainants by Department attorneys.

Our conclusion, based principally on the Fair Housing Act statute itself, is confirmed by the strong legal policy considerations that require the government attorney to represent the government rather than the complainant. First, Department attorneys are to be guided in their conduct by the Code of Professional Responsibility of the American Bar Association, 28 C.F.R. § 45.735–1(b) (1994). The Code, like the Model Rules which have largely succeeded it, requires attorneys to avoid conflicts of interest. Model Code of Professional Responsibility DR 5–105(A); Model Rules of Professional Conduct Rule 1.7 (1994). If the government attorney were not only to represent the government, but also a complainant, conflicts would sometimes arise between the government's interest and the private complainant-client's interest. *See United States v. Wheat*, 813 F.2d 1399, 1402 (9th Cir. 1987), *aff'd*, 486 U.S. 153 (1988) (conflicts of interest arise whenever an attorney's loyalties are divided; courts may decline proffers of waivers regarding conflicts). If the government attorney were formally representing the complainant, the possibility of violating other rules would also rise. For instance, the Model Rules of Professional Conduct Rule 1.2 (1994) requires that a lawyer follow a client's decisions concerning the objectives of representation, mandates that an attorney consult with the client as to means, and requires that the attorney heed a client's decision whether to accept an offer of settlement. If formal representation were undertaken, these ethical provisions might sometimes conflict with the attorney's duties towards the government.

For example, we understand that some complainants may want to accept a confidentiality provision as part of settlement negotiations, when Department policy and public records laws may preclude Department attorneys from agreeing to such terms. Similarly, we understand that the Civil Rights Division prefers in-court settlements, so as to promote enforceability of the agreements, and to deter civil rights violations by others, whereas complainants may wish to settle out of court.

Losing complainants might wish to press an appeal, when the Department's procedures repose ultimate authority for such appeal decisions with the Solicitor General. 28 C.F.R. §0.20(b) (1994). Complainants also might wish to institute collection actions in the event of a failure to pay on the part of the defendant when the particular Departmental office responsible for debt collection may have other priorities. In all likelihood, complainants will typically favor a strategy of seeking the maximum damages for themselves, rather than injunctive relief. In all these circumstances, then, the establishment of an attorney-client relationship would require the government attorney to take actions that might deviate from Department policy and priorities.

The role of the government attorney is somewhat more complicated than that of a private attorney: that is, the government attorney may have a higher obligation to "do justice" and to correct public or societal wrongs, rather than simply to advocate the position of the attorney's client. *See EEOC v. Occidental Life Ins. Co.*, 535 F.2d 533 (9th Cir. 1976), *aff'd*, 432 U.S. 355 (1977); *EEOC v. Huttig Sash & Door Co.*, 511 F.2d 453 (5th Cir. 1975). The government attorney, then, typically perceives him or herself as being obliged to undertake a more thorough investigation of the facts before filing a suit than the rules of pleading and ethics would strictly require. The force of an accusation lodged in the form of a complaint filed by the government is stronger than that of a complaint filed by an ordinary citizen. Likewise, at the end of the case, government attorneys attempt to arrive at a just settlement (not always the maximum possible, due to the government's negotiating advantages), and, as noted above, government attorneys may prefer to seek injunctive relief, rather than damages on behalf of one person. Were the government attorney simply serving as the attorney for the private complainant, the attorney would seek to maximize a dollar recovery for the private complainant, regardless of the strength of the case or the desirability of injunctive relief. *See McClain v. Wagner Elec. Corp.*, 550 F.2d 1115 (8th Cir. 1977). Finally, the government attorney may be required to consider overall governmental policy and the government's litigative posture in other cases in litigation. As a consequence, the government attorney may refrain from making certain arguments permissible under the law, but contrary to the government's position in other cases. *See Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) (recognizing that federal agencies may not be able to serve the interest of both private and public interests). For all of these reasons, we conclude that the government attorney does not serve as the attorney for the private complainant in a Fair Housing Act case, as such formal representation might require the government attorney to file prematurely or make accusations that are not fully supported, urge settlements that do not best promote the public interest, and make arguments that may be at odds with the government's litigative positions in other cases.

5

**Fiduciary Duties**

You also asked whether the government attorney has a "fiduciary duty" to the complainant. For the same reasons that the government attorney does not undertake an attorney-client relationship with the complainant, he or she does not have fiduciary duties to the complainant. The term "fiduciary duty" underscores the obligation to act in the client's best financial interest, and, again, we can foresee cases when, contrary to the interest of the complainant, the government attorney may determine that seeking injunctive relief is most appropriate, or seeking relief on behalf of a broader class of aggrieved persons would be the best strategy. Moreover, undertaking a fiduciary relationship might trigger a host of obligations under the relevant state law regarding fiduciaries.

**Retainer Agreements**

You asked whether you should formally enter into retainer-like agreements with the complainants at the beginning of the litigation and, if so, what should be addressed in such an agreement. Because there is no attorney-client relationship established, no retainer agreement should be entered into. The question of *disclosure* is outside the expertise of the Office of Legal Counsel, but in view of the potential confusion on behalf of complainants regarding the nature of the relationship, it would seem prudent to advise them that the government attorney is not their attorney, although the government is bringing a case on their behalf, and that they are entitled to retain their own counsel. We have reviewed the form letter used by the Civil Rights Division, which you transmitted to us, as well as the Department of Housing and Urban Development's sample letter to complainants in administrative proceedings. The Civil Rights Division's letter tracks the statutory language in stating that it is bringing suit "on your behalf," whereas HUD uses the word "represents" unless and until there is a conflict. The HUD letter thus may create confusion by overstating the nature of the relationship. However, both letters are perfectly clear in stating that the possibility exists that the government's interests may diverge from the complainant's, and that the complainant is entitled to retain his or her own attorney.

**Other Duties Towards Complainants**

You asked what further obligations the government has toward the complainant in involving them in various litigation decisions. The statute does not set forth such obligations, and we decline to read them into the statute. *See The Attorney General's Role as Chief Litigator for the United States*, 6 Op. O.L.C. 47 (1982) (absent clear legislative directives to the contrary, the Attorney General has full plenary authority over all litigation to which the United States is a party), 28

U.S.C. § 516 (conduct of litigation reserved to the Department of Justice); 28 U.S.C. § 519 (Attorney General shall supervise all litigation to which the United States is a party and shall direct assistants in the course of their duties). It falls within the expertise of litigating divisions to determine how best to work with complainants, in view of the statute's intent, the litigation decisions to be made, and attorney time-management concerns.

## Other Privileges

You ask whether other privileges could protect communications with the complainant. Because we are not experts on litigation privileges, we will not undertake a full assessment of the common interest/joint defense privilege, but will simply note its existence, recognition, and apparent applicability here. *See In re Grand Jury Subpoenas, 89–3 and 89–4*, 902 F.2d 244, 249 (4th Cir. 1990) (citing cases); *Sheet Metal Workers Int'l Ass'n v. Sweeney*, 29 F.3d 120, 124 n.3 (4th Cir. 1994); *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994) (citing Supreme Court Standard 503(b): "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, . . . (3) by him or his lawyer to a lawyer representing another in a matter of common interest . . . ."); *In re Auclair*, 961 F.2d 65 (5th Cir. 1992); *United States v. Schwimmer*, 892 F.2d 237 (2d Cir. 1989). In *Bauman v. Jacobs Suchard, Inc.*, 136 F.R.D. 460, 461–62 (N.D. Ill. 1990), the court protected documents transmitted from the complainant to the Equal Employment Opportunity Commission ("EEOC"), notwithstanding the fact that there is not a formal attorney-client relationship between the EEOC and a complaining party. Here, the complainant and the government would have a mutual interest in vindicating federally established protection from housing discrimination, and disclosures made by the complainant to the Department would facilitate the rendition of legal services to both the government as client and to the complainant. Accordingly, in jurisdictions recognizing the privilege, courts should find that the privilege applies to communications between fair housing complainants and the Department attorneys filing on their behalf, when those communications are made in the course of an ongoing common enterprise and are intended to further the enterprise. *Schwimmer*, 892 F.2d at 243.

In sum, we conclude that no formal attorney-client relationship exists between the government and a complainant or aggrieved party in a case referred to the Department under the Fair Housing Act.

WALTER DELLINGER
*Assistant Attorney General*
*Office of LegalCounsel*

7